893 So.2d 773 (2005)
Gerald CHAMPAGNE, Sr.
v.
Sharonda L. WARD, Independent Fire Insurance Company and Southern Farm Bureau Casualty Insurance Company.
No. 2003-CC-3211.
Supreme Court of Louisiana.
January 19, 2005.
*774 Porteous, Hainkel & Johnson, James Stephen Thompson, Chauntis Trenelle Jenkins, John J. Hainkel, Jr., New Orleans, Counsel for Applicant.
Thomas Everett Campbell, Jacqueline Rose Anderson Campbell, and Keogh, Cox & Wilson, Ltd., John P. Wolff, III, Baton Rouge, Counsel for Respondents.
JOHNSON, Justice.
Following the Louisiana Legislature's enactment of La. R.S. 22:1406(D)(1)(a)(iii) by Act No. 444 of 1987, courts have differed on the impact of the amendment as it applies to the interpretation of uninsured/underinsured motorist ("UM") coverage in automobile accident cases occurring in Louisiana and involving a Louisiana resident but where the contract of insurance was issued and delivered in a foreign *775 jurisdiction. The first, second, and third circuit courts of appeal have held that a choice-of-law analysis, pursuant to La. C.C. arts. 3515 and 3537, is the starting place to determine which state's law should apply, while the fourth and fifth circuit courts of appeal have held that La. R.S. 22:1406(D)(1)(a)(iii) mandates that Louisiana law automatically applies. Plaintiff urges this court to adopt the reasoning of the fourth and fifth circuit courts of appeal, while plaintiff's UM provider, Mississippi Farm Bureau, advances the conclusions reached by the first, second, and third circuits. We granted this writ of certiorari to address the split in the circuits.
For the reasons assigned below, we find that a choice-of-law analysis, as codified in La. C.C. arts. 3515 and 3537 and embraced by the first, second, and third circuit courts of appeal, is the appropriate methodology for determining which state's law applies to the interpretation of UM contracts in multistate cases such as the present one, even when the accident occurs in Louisiana and involves a Louisiana resident. Accordingly, we reverse the lower courts' rulings, and we conclude that Mississippi law applies.

FACTS AND PROCEDURAL HISTORY
On November 15, 2000, plaintiff, Gerald Champagne, and defendant, Sharonda Ward, were involved in an automobile accident that occurred in New Orleans, Louisiana. At the time of the accident, plaintiff was a resident of Mississippi, and the vehicle which he was driving was covered by a policy of insurance negotiated and issued in Mississippi. Defendant was a resident of Louisiana and was driving a vehicle covered by a policy of insurance negotiated issued in Louisiana.
On November 14, 2001, plaintiff filed a suit for personal injuries in Louisiana's Civil District Court for the Parish of Orleans. Named defendants are Ward, along with her insurance company, Independent Fire Insurance Company, and plaintiff's UM provider, Southern Farm Bureau Casualty Insurance Company (hereinafter "Mississippi Farm Bureau").[1]
In response to the suit, Mississippi Farm Bureau filed a motion for summary judgment, alleging that the following facts are undisputed:
1. The accident occurred on November 15, 2000, wherein Gerald Champagne was westbound on North Miro Street in New Orleans, and while attempting a left turn, was struck by Sharonda Ward.
2. A policy of automobile liability insurance was issued in Louisiana by Independent Fire Insurance Company to Sharonda L. Ward for the accident at issue with $10,000 of single limit of liability.
3. A policy of underinsured/uninsured motorist insurance was issued and delivered in Mississippi by Mississippi Farm Bureau Casualty Insurance Company to plaintiff Gerald Champagne in the amount of $10,000.
4. Mr. Champagne resides in Mississippi, and his vehicle is garaged in Mississippi.
5. The provisions of the Mississippi Farm Bureau policy contained a "dollar for dollar" setoff regarding uninsured motorist coverage.
*776 According to Mississippi Farm Bureau, this case is governed by Louisiana's choice-of-law statutes, specifically, La.C.C. arts. 3515 and 3537, infra, which mandate that Mississippi law be applied to the interpretation of plaintiff's UM contract. Under Mississippi law, and according to the terms of plaintiff's policy, Mississippi Farm Bureau's liability is reduced on a "dollar for dollar" basis by the amount of liability coverage available from the tortfeasor. In this case, where plaintiff has $10,000 in UM coverage and the tortfeasor has $10,000 in liability coverage, UM benefits are unavailable to plaintiff.[2]
Plaintiff responded to Mississippi Farm Bureau's motion for summary judgment by arguing that this dispute is governed by La. R.S. 22:1406(D)(1)(a)(iii), under which he is entitled to recover UM benefits from Mississippi Farm Bureau.
The trial court denied Mississippi Farm Bureau's motion for summary judgment without assigning written reasons. In an unpublished action, the court of appeal denied Mississippi Farm Bureau's application for supervisory writs, stating:
On showing made, the writ application is denied. We cannot review the insurance policy because the relator has not made it part of the record in the application for supervisory writs.
Subsequently, the majority of the court of appeal granted rehearing, solely to allow Mississippi Farm Bureau "to supplement the record with a copy of the insurance policy at issue."[3] However, the appellate court ultimately concluded that the trial court did not err in denying the motion for summary judgment.
Mississippi Farm Bureau filed an application for certiorari with this court, and by order dated February 20, 2004, we granted the application. Champagne v. Ward, XXXX-XXXX (La.2/20/04), 866 So.2d 834.

DISCUSSION

Standard of Review
Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Gov't, 04-0066 (La.7/6/04), 880 So.2d 1. The movant bears the burden of proof. La. C.C.P. art. 966(C)(2). If the movant meets this initial burden, the burden then shifts to plaintiff to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 137. Thereafter, if plaintiff fails to meet this burden, there is no genuine issue of material fact and defendant is entitled to *777 summary judgment as a matter of law. Id. This court has recognized that a "genuine issue" is a "triable issue," an issue in which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1006 (citing Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 751). Further, this court has defined a "material fact" to be one in which "its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Id.

La. R.S. 22:1406 v. Choice-of-law Analysis
The issue for our consideration is whether Louisiana law automatically applies to a foreign UM policy in a multistate case when the accident occurs in Louisiana and involves a Louisiana resident, or whether our courts must engage in a choice-of-law analysis to determine which state's law is applicable.
Foreign insurers generally argue that the State of Louisiana has no authority to modify contracts written in other states. However, Louisiana has expressed as a public policy its intent to protect Louisiana residents and others when an accident occurs on Louisiana roads. Our stated goal is to promote full recovery for innocent automobile accident victims by mandating minimum liability insurance coverage and making coverage available when the tortfeasor is uninsured or underinsured. See Martin v. Champion Ins. Co., 95-0030 (La.6/30/95), 656 So.2d 991, 994.
The first, second, and third circuit courts of appeal have held that courts must conduct a choice-of-law analysis to determine which state's UM law applies, even when the accident occurs in Louisiana and involves a Louisiana resident. See, Zuviceh v. Nationwide Ins. Co., XXXX-XXXX (La.App. 1st Cir.5/11/01), 786 So.2d 340, writ denied, 2001-2141 (La.11/09/01), 801 So.2d 373; Adams v. Thomason, 32,278 (La.App.2d Cir.3/1/00), 753 So.2d 416, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 965; Anderson v. Oliver, 91-1102 (La.App. 3rd Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434.
Conversely, the fourth and fifth circuit courts of appeal have held that Louisiana law automatically applies to any UM policy when the accident occurs in Louisiana and involves a Louisiana resident, including a UM policy issued and negotiated in a foreign jurisdiction. See, Dekeyser v. Automotive Casualty Ins. Co., 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676; Austin v. Western World Ins. Co., 99-2541 (La.App. 4th Cir.5/17/00), 765 So.2d 390, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 1288; Crutchfield v. Landry, XXXX-XXXX (La.App. 4th Cir.1/31/01), 778 So.2d 1249; and Drew v. Martello, 98-1141, 98-1142 (La.App. 5th Cir.2/23/99), 729 So.2d 90.

Historical Overview of La.R.S. 22:1406
The Louisiana Legislature enacted Louisiana's uninsured motorist law by Act No. 187 of 1962, which amended La. R.S. 22:1406 to add subsection (D). The law was passed to aid a growing class of automobile-accident victims who were left uncompensated because their injuries were caused by uninsured drivers. See, W. Shelby McKenzie, Louisiana Uninsured Motorist Coverage  After Twenty Years, 43 L. La. Rev. 691 (1983). The Louisiana Legislature has amended this statute numerous times since its inception. Id. at 691-694; also See, Historical and Statutory Notes to La. R.S. 22:1406.
Relevant to this discussion, in 1972, the law was amended by Act No. 137 which introduced the concept of "underinsured" protection. The amendment provided that the statutory definition of "uninsured motor vehicle" would include "an insured motor vehicle when the automobile liability insurance coverage on such *778 vehicle is less than the uninsured motorist coverage carried by an insured." The Louisiana Legislature broadened the coverage of the statute by Act No. 154 of 1974. This amendment rewrote the 1972 language from "less than the uninsured motorist coverage carried by an insured" to "less than the amount of damages suffered by an insured...."
The purpose of the UM statute then read as follows:
[T]o promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Bond v. Commercial Union Assurance, 407 So.2d 401 (La.1981); Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In Snider v. Murray, 461 So.2d 1051 (La.1985), this court addressed the issue of whether Louisiana's UM law could be applied to a foreign insurance policy covering a vehicle registered in a foreign state. Snider arose from a fatal accident that occurred in Louisiana and involved a Louisiana defendant. At the time of the accident, the victim, Snider, had a UM insurance policy in force that was negotiated and issued to him in Texas. He had obtained the UM insurance when he was a Texas resident, although he subsequently changed his residency to Louisiana. Snider's estate sued his Texas UM insurance carrier in Louisiana. However, the Texas UM insurance policy contained "offset" provisions that were prohibited in Louisiana.
The trial court refused to apply the Texas "offset" provisions and applied Louisiana law, and the court of appeal affirmed, holding that Louisiana law applied under an interest analysis theory because Louisiana's interest in the dispute superceded that of Texas. On the defendant's application, this court granted certiorari to resolve a split in the lower courts regarding the application of Louisiana's UM law to foreign insurance policies. The applicable Louisiana statute, La. R.S. 22:1406(D)(1), at the time provided in pertinent part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits.
(Emphasis added).
In its reasoning, this Court agreed with the decision reached in Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983), where the court of appeal analyzed La. R.S. 22:1406(D)(1) and concluded that the statute expressly applied to policies delivered in Louisiana to cover vehicles garaged in Louisiana. Relying on Abel, this Court highlighted the pertinent language in La. R.S. 22:1406(D)(1) that mandates that the *779 statute only be applied to policies that are "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." Snider, supra, at 1053. Since the UM insurance policy in question was issued to Snider in Texas, this Court held that the plaintiffs could not impose Louisiana's UM requirements upon a Texas UM policy and concluded by stating:
Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La. R.S. 22:1406(D)(1).
Id. at 1053-1054.
Following the Snider decision, the Louisiana Legislature amended Louisiana's UM law and enacted La. R.S. 22:1406(D)(1)(a)(iii) by Act No. 444 of 1987[4]. Two changes were made to the statutory language highlighted by this court in Snider, supra, at 1053. First, the words "in this state" were deleted. Second, the words "or as provided in this Subparagraph" were added. Thus, the statute now mandated that Louisiana's UM law be applied to policies that are "delivered or issued for delivery with respect to any motor vehicle registered or principally garaged in this state or as provided in this Subparagraph...." The Subparagraph referred to is the enabling statute, La. R.S. 22:1406(D)(1)(a)(iii) which provides as follows:
This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.[5]
In Act No. 203 of 1988, the Louisiana Legislature again amended and reenacted Louisiana's UM law. In addition to several non-germane amendments, changes were once more made to the language underscored by this court in Snider, supra, at 1053. First, contrary to its previous amendment, the Legislature again included the words "in this state" that were deleted in Act No. 444 of 1987. Second, the phrase that read "any motor vehicle registered or principally garaged in this state" was rewritten. Consequently, at the time of the present cause of action, the material language of La. R.S. 22:1406(D)(1) mandated that Louisiana UM law be applied to policies that are "delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph...."
The enabling statute, La. R.S. 22:1406(D)(1)(a)(iii), has remained unchanged and has been cited by several lower courts as superceding our decision in Snider, supra. In Willett v. National Fire and Marine Ins. Co., 594 So.2d 966 (La.App. 3rd Cir.02/12/92), writ denied, 598 So.2d 355 (La.1992), the court held that "(w)e interpret the effect of Act 444 of *780 1987 as overruling Snider." Id. at 969. The court in Reeves v. Allstate Ins. Co., 619 So.2d 202 (La.App. 3rd Cir.06/02/1993), determined that the Louisiana Legislature added La. R.S. 22:1406(D)(1)(a)(iii) "in an obvious effort to legislatively overrule Snider." Id. at 204. In Bell v. Farmer's Ins. Group, 93-2067 (La.App. 4th Cir.4/14/94), 635 So.2d 1305, the court concluded that, in reaction to Snider, supra,"the Legislature adopted Act 444 which imposed Louisiana's UM obligations on any liability insurance covering any accident in this state which involves a Louisiana resident." Id. at 1311. Making reference to its prior decision in Willett, supra, the court in Trautman v. Poor, 96-627 (La.App. 3rd Cir.12/11/96), 685 So.2d 516 found that La. R.S. 22:1406(D)(1)(a)(iii) "reflected the Legislature's intent to overrule Snider and to broaden the reach of Louisiana's uninsured/underinsured motorist law on coverage questions." Id. at 520. Lastly, in Adams v. Thomason, 32,728 (La.App. 2nd Cir.3/1/00), 753 So.2d 416, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 965, the court opined that the Legislature responded to Snider, supra, by adding La. R.S. 22:1406(D)(1)(a)(iii). Id. at 425.
We agree that La. R.S. 22:1406(D)(1)(a)(iii) superceded Snider, supra, to the extent that now Louisiana's UM law can be applied to foreign insurance policies in multistate cases when the accident occurs in Louisiana and involves a Louisiana resident. However, the dispute for our consideration is the split in the lower courts regarding whether Louisiana's UM law must be applied to the interpretation of a foreign insurance policy in a multistate case when the accident occurs in Louisiana and involves a Louisiana resident or whether courts should first engage in a choice-of-law analysis to determine which state's law applies.

Choice-of-law Provisions
Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of the Civil Code. La. C.C. art. 14. The residual nature of the provisions of Book IV is established by the introductory phrase of La. C.C. art. 14 that reads "unless otherwise expressly provided by the law of this state." La. C.C. art. 14 Revision Comment (b). This phrase means that the provisions of Book IV are not intended to supercede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code (See, La. R.S. 22:611 et seq.). Id. When applicable, those rules, being more specific, will prevail over the provisions of Book IV of the Civil Code. See, Symeon C. Symeonides, Louisiana Conflicts Law: Two Surprises, 54 La. L.Rev. 497, 503.[6]
La. C.C. arts. 3515 et seq. contain the new choice-of-law rules. La. C.C. art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be *781 most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
La. C.C. art. 3537 provides as follows:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation and, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Recent Jurisprudence Regarding La. R.S. 22:1406
In a series of holdings, the fourth and fifth circuit courts of appeal held that La. R.S. 22:1406(D)(1)(a)(iii) is a specific rule that prevails over the provisions of Book IV of the Civil Code and should, therefore, be automatically applied to the interpretation of foreign UM policies without engaging in a choice-of-law analysis. First, the fourth circuit court of appeal decided Dekeyser v. Automotive Casualty Insurance Company, 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676, which involved a three-car accident that occurred in New Orleans, Louisiana. Residents of Louisiana, Arizona, and California were involved in the collision. The plaintiff, an Arizona resident, was a guest passenger in a vehicle driven and owned by another Arizona resident. The plaintiff filed suit in Louisiana for personal injuries. State Farm Mutual Insurance Company (hereinafter "State Farm"), the driver's UM provider, was among the named defendants. Following a jury trial, the trial court rendered judgment in favor of the plaintiff. On appeal, State Farm argued that Arizona law should apply, while the plaintiff asserted that Louisiana law governed the case. The court of appeal held the following:
LSA-R.S. 22:1406(D)(1)(a)(iii) provides a specific rule governing the question of underinsured motorists insurance coverage in [the plaintiff's] case. Therefore, the specific rule controls the conflict of laws issue, irrespective of whether the Court considers the general rules of Book IV or the general rules controlling conflict of laws issues existing in Louisiana before the legislature's codification of the rules with Book IV.
Next, the fourth circuit addressed the issue in Austin v. Western World Ins. Co., supra, 99-2541 (La.App. 4th Cir.5/17/00), 765 So.2d 390, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 1288. In Austin, a taxicab and a flatbed truck collided on a highway in New Orleans, Louisiana. Plaintiffs were New York residents who were traveling in the taxicab. Both the *782 taxicab driver and the driver of the flatbed truck were Louisiana residents.
Plaintiffs filed suit in Louisiana against eight defendants including GEICO, plaintiff Richard Austin's UM provider and P.G. Insurance Company, which provided additional UM coverage to Austin through his parent's insurance policy. In response to the suit, GEICO filed a motion for summary judgment arguing that New York's UM law provided an "offset" that should be applied to its UM liability. In opposition, the plaintiffs asserted that since the accident occurred in Louisiana and involved a Louisiana resident then Louisiana law should apply to the interpretation of the GEICO policy. After the trial court denied GEICO's motion, the plaintiffs moved for summary judgment against the New York insurers, arguing that La. R.S. 22:1406(D)(1)(a)(iii) should apply to their respective UM policies.
On appeal, the fourth circuit, relying upon its prior decision in Dekeyser, supra, declined to apply New York's offset provisions. Instead, the court concluded that "it was the Legislature's intent that the specific rule, i.e., LSA-R.S. 22:1406(D)(1)(a)(iii), control the conflict of laws issue, rather than the general rules of Book IV concerning conflict of laws." Id. at 393.
Lastly, the fourth circuit court of appeal addressed La. R.S. 22:1406(D)(1)(a)(iii) in Crutchfield v. Landry, XXXX-XXXX (La.App. 4th Cir.1/31/01), 778 So.2d 1249. The Crutchfield case arose from a fatal accident that occurred in Louisiana when defendant, Derek Landry, struck plaintiff, Samuel Crutchfield, while Crutchfield was standing on the shoulder of a highway. Landry was a Louisiana resident at the time of the accident, and Crutchfield was a California resident working for Trism, Inc., an interstate trucking company. Trism, Inc. was incorporated in Delaware but had its principal place of business in Georgia. Trism, Inc. had in effect an insurance policy with Lexington Insurance that was purchased and negotiated in Georgia.
Crutchfield's survivors, all of whom were California residents, filed suit in Louisiana against several defendants including Lexington Insurance. Following a hearing, the trial court granted plaintiffs' partial summary judgment and ruled that Lexington's policy provided UM coverage for the accident. Id. at 1250. On appeal, Lexington asserted that its insurance policy contained a clear and valid UM exclusion that was applicable. However, the exclusion was valid under the law of Georgia but not Louisiana. The court, relying upon its prior holdings in Dekeyser, supra, and Austin, supra, held the following:
Louisiana's interest in regulating awards to victims in this state's highways, in protecting persons traveling on its highways from damage caused by uninsured/underinsured motorist, and in equally assessing the burden of awards to all culpable parties outweighs those of Georgia. Furthermore, a contrary holding would undercut and weaken Louisiana's long standing policy of requiring uninsured/underinsured motorist coverage to protect victims who travel on this state's highways and are injured by Louisiana residents. Further, our Circuit in Dekeyser and Austin, has clearly interpreted LSA-C.C. art. 14, dealing with multistate cases, to mean that the general choice-of-law rules (i.e. La. C.C. arts. 3515 and 3537) are superceded by more specific choice-of-law provisions (i.e. La. R.S. 22:1406(D)(1)(a)(iii)).
Id. at 1252.
The fifth circuit court of appeal interpreted La. R.S. 22:1406(D)(1)(a)(iii) in the same fashion when it decided *783 Drew v. Martello, 98-1141, 98-1142 (La.App. 5th Cir.2/23/99), 729 So.2d 90 and held that "the Louisiana UM law specifically provides that it is applicable to `any accident which occurs in this state and involves residents of this state.'" Id. at 93.
In the present case, Mississippi Farm Bureau disagrees with the conclusions of the fourth and fifth circuit courts of appeal and urges this court to adopt the adverse position articulated by the first circuit court of appeal in Zuviceh v. Nationwide Insurance Company, XXXX-XXXX (La.App. 1st Cir.5/11/01), 786 So.2d 340, writ denied, 2001-2141 (La.11/09/01), 801 So.2d 373. That case concerned a head-on collision that occurred in Slidell, Louisiana and involved Barbara Songy Zuviceh, a Mississippi resident, and Steven Wicks, a Louisiana resident. When the accident happened, Zuviceh had in force a UM insurance policy that was issued to her and her husband by Nationwide Insurance Company (hereinafter Nationwide). The UM policy was negotiated and issued in Mississippi and covered Zuviceh's vehicle which was registered in Mississippi.
Zuviceh petitioned the court for a judgment declaring which state's law governed the interpretation of the UM policy, Mississippi or Louisiana. The trial court conducted a choice-of-law analysis and ruled that Mississippi law should apply. Id. at 342. In making its ruling, the trial court determined that "Mississippi law applied to interpret the terms of the Nationwide policy because Mississippi has a more substantial interest in the uniform application of its laws than Louisiana has in providing an insurance remedy to an out-of-state resident who sustains an injury while temporarily within the state's borders." Id. at 342.
On appeal, the first circuit court of appeal carried out a comprehensive examination of this court's and the lower court's analysis of Louisiana's UM law and its application to foreign insurance policies in multistate cases occurring in Louisiana and involving a Louisiana resident. After citing La. C.C. art. 14, the court concluded La. R.S. 22:1406(D)(1)(a)(iii) is not a provision "otherwise expressly provided by the law of this state" which requires application of Louisiana law without a conflict-of-law analysis. Id. at 344. In its analysis, the court emphasized the introductory paragraph of La. R.S. 22:1406(D)(1)(a)(iii) which states, "D. The following provisions shall govern the issuance of uninsured motorist coverage in this state." Applying Louisiana's rules of statutory interpretation, the court concluded that the introductory paragraph of La. R.S. 22:1406(D)(1)(a)(iii) "states unqualifiedly that the provisions enumerated thereafter apply to policies issued in Louisiana." Id. at 344. Further, the court stated:
The Legislature did not change that qualification by amending the statute to include the language of LSA-R.S. 22:1406(D)(1)(a)(iii). As it is written, the amendment, which is one of the "following provisions" referred to in LSA-R.S. 22:1406(D), governs the issuance of UM coverage in Louisiana.
Id. at 344-345. Therefore, the court affirmed the trial court's ruling that a choice-of-law analysis, as codified in Book IV of the Civil Code, specifically, La. C.C. arts. 3515 and 3537, is the appropriate starting point for determining which state's law should apply to the interpretation of the UM policy. Id. at 345.
The first circuit court of appeal re-affirmed its Zuviceh decision in Dreisel v. Metropolitan Property and Casualty Ins. Co., 2001-2705 (La.App. 1st Cir.12/20/02), 836 So.2d 347, writ denied, XXXX-XXXX (La.3/28/03), 840 So.2d 575. Dreisel arose from a single-car accident in St. Tammany Parish, Louisiana involving Kathleen *784 Dreisel, a Massachusetts resident, and guest passenger in a vehicle owned and operated by a Louisiana resident. On the date of the accident, Dreisel had in effect a UM policy issued to her and her husband by Metropolitan Property and Casualty Insurance Company (hereinafter Metropolitan). The policy was negotiated and issued in Massachusetts, and the vehicle was registered in Massachusetts.
Dreisel sought to collect under the Metropolitan UM policy but was denied coverage based on a reduction clause contained in the policy. The policy, like Massachusetts law, provided for a "dollar for dollar" reduction in Metropolitan's liability based on monies the insured collected from the tortfeasor. Metropolitan argued that it had no liability under the UM policy since the tortfeasor's insurance company had already tendered to Dreisel the per person policy limit of $100,000, plus $5,000 in medical payments, an amount which exceeded Dreisel's $50,000 per person UM limit. As a result, Dreisel filed suit against Metropolitan in Louisiana.
Following suit, Dreisel filed a motion for summary judgment asserting that Louisiana law, not Massachusetts, governed the interpretation of the UM policy. In response, Metropolitan filed a cross-motion for summary judgment arguing the reverse. The trial court granted Dreisel's partial motion for summary judgment, stating:
[T]he accident occurred in Louisiana, the car in which Dreisel was riding at the time of the accident was registered in Louisiana and driven by a Louisiana resident, and significant medical treatment was rendered to Dreisel in Louisiana.
Metropolitan appealed the trial court's ruling maintaining that Massachusetts law should be applied to a Massachusetts insurance contract that expressly provided that the policy would be governed by Massachusetts law.
After citing relevant statutes  La. R.S. 22:1406(D)(1)(a)(iii) and La. C.C. art. 14  and noting the split in the circuits on this issue, the first circuit held that "(b)ecause the policy under consideration in this case was issued in Massachusetts, as opposed to Louisiana, subparagraph (D)(1)(a)(iii) has no application." Id. at 350. Further, the court concluded that "the objective is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand. LSA-C.C. arts. 3515 and 3537." Id. at 350.
Similar determinations have been made by the second and third circuit courts of appeal. In Anderson v. Oliver, 97-1102 (La.App. 3rd Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434, plaintiff, John Anderson, a Texas resident at the time of the accident, was struck by Cynthia Oliver in Acadia Parish, Louisiana as he exited the tractor-trailer he was driving to check his load. Plaintiff filed suit in Louisiana for his personal injuries and named several defendants, including Assicurazioni Generali, S.P.A. (hereinafter Generali), who had issued the UM policy that covered the trailer. The UM policy was negotiated and issued entirely outside of Louisiana through an insurance agent with offices in both North Carolina and Georgia to Morgan Southern, who leased the tractor from Eddie Waldrup of Houston, Texas. The policy complied with Georgia law.
After the suit was commenced, Anderson filed a partial motion for summary judgment asking the court to apply Louisiana law, and not Georgia's, to the interpretation of the UM policy. The trial court granted the motion relying on the third circuit court of appeal's decision in Trautman v. Poor, 96-627 (La.App. 3rd Cir.12/11/96), 685 So.2d 516. In Trautman, *785 the court held that when an accident occurs in Louisiana and involves a Louisiana resident, La. R.S. 22:1406(D)(1)(a)(iii) supercedes the choice-of-law rules in Book IV of the Civil Code and should apply to all liability policies providing UM coverage, even if issued and delivered in a foreign state to a resident of that state. Trautman at 521. After the trial court's ruling in the present case, Generali appealed asserting that the trial court's reliance on Trautman was erroneous and that La. R.S. 22:1406(D)(1)(a)(iii) was unconstitutional.
On appeal, the third circuit court of appeal reversed the trial court's ruling and rejected the methodology employed by the Trautman court. Id. at 305. Instead, the court adhered to the approach set forth in Willett v. National Fire and Marine Insurance Co., 594 So.2d 966 (La.App. 3rd Cir.1992), writ denied, 598 So.2d 355 (La.1992), and Holcomb v. Universal Insurance Co., 93-1424 (La.App. 3rd Cir.6/1/94), 640 So.2d 718, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643. In addition to re-affirming it decisions in Willett and Holcomb and rejecting the Trautman decision, the Anderson court determined that the appropriate rules for determining which state's law applied were La. C.C. arts. 3515 and 3537. Id. at 305.
Similarly, in Adams v. Thomason, 32,728 (La.App. 2nd Cir.3/1/00), 753 So.2d 416, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 965, plaintiff Bobby Adams was struck by a cotton trailer in Richland Parish, Louisiana while he was leaning on a parked truck occupied and operated by Rodney Grubisic. At the time of the accident, Grubisic had in force a UM policy that was negotiated and issued to him in Wisconsin by State Farm. Adams and his wife, Bonnie Adams, filed suit in Louisiana seeking damages for his injuries. State Farm, as Grubisic's insurer, was one of numerous named defendants. The trial court ruled that State Farm's UM policy provided coverage for the accident because according to the policy definitions, Adams was occupying the vehicle at the time of the accident.
On State Farm's appeal, the court noted that since the enactment of La. R.S. 22:1406(D)(1)(a)(iii), the appellate courts have struggled with the question of whether the statute automatically requires application of Louisiana law or whether a conflict-of-laws analysis must be performed. Id. at 425. After a review of relevant decisions by the first and third circuit courts of appeal, the court concurred with the third circuit's decision in Anderson, supra, and concluded that "it is more appropriate to conduct a full analysis of the conflict-of-laws principles involved than to merely rely upon La. R.S. 22:1406(D)(1)(a)(iii)." Id. at 426. Thereafter, the court turned to La. C.C. arts. 3515 and 3537 to determine which state's law applied.
For the reasons that follow, we agree with the conclusion reached by the first, second, and third circuit courts of appeal.
We first observe that La. C.C. art. 14 and its comments were cited by the fourth and fifth circuit courts of appeal in support of their conclusions that La. R.S. 22:1406(D)(1)(a)(iii) automatically applies in multistate cases such as the present one. The comments emphasized by those courts state that "the provisions of Book IV are not intended to supercede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code...." Contrary to the holdings of those appellate courts, this language is inapplicable to La. R.S. 22:1406(D)(1)(a)(iii) because the statute is limited by the introductory language of La. R.S. 22:1406(D) which states that the statute " *786 shall apply to the issuance of uninsured motorist coverage in this state."
When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided. First National Bank of Boston v. Beckwith Machinery Company, 94-2065 (La.2/20/95), 650 So.2d 118. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). The word "shall" in a statute represents mandatory language. La. R.S. 1:3. Additionally, when the wording of a statute is clear and free of ambiguity, the letter of the statute shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4.
We find that the decisions by the fourth and fifth circuits discussed above violate this essential aspect of statutory interpretation because they fail to give effect to all parts of the statute. In fact, the introductory language of La. R.S. 22:1406(D), that the statute is applicable to UM coverage issued in this state, is omitted entirely from their discussions. The introductory language is clear and unambiguous and does not lead to absurd consequences. To hold otherwise would be to conclude that any accident occurring in Louisiana and involving a Louisiana resident is automatically governed by Louisiana law, irrespective of the foreign state's relevant public policies, pertinent contacts with this state, and the nature, type, and purpose of the contract involved.
On the contrary, we conclude that the appropriate starting point in a multistate case such as the present one is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the UM policy. Thus, we affirm the choice-of-law methodology codified in La. C.C. arts. 3515 and 3537 and embraced by the first, second, and third circuit courts of appeal. We reject the automatic application of Louisiana's UM law adopted by the fourth and fifth circuit courts of appeal.

Choice-of-law Analysis
Louisiana's Conflict of Laws provisions, as set forth supra, afford the balancing of competing interests between states. The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand. See La.C.C. arts. 3515 and 3537, supra. With respect to the instant case, the law of the state applicable to the insurance contract and its UM coverage is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the factors set forth in those Civil Code articles.
One seminal case in this state on the issue of conflict of laws is Johnson v. St. Paul Mercury, 256 La. 289, 236 So.2d 216 (1970). In Johnson, two Louisiana residents were involved in an accident which occurred in Arkansas. This Court, recognizing the doctrine of Lex loci delicti,[7] concluded that Arkansas law should be applied by Louisiana courts, as the accident took place in Arkansas.
In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), the plaintiffs, residents of Florida, were injured in an accident while *787 visiting Louisiana. At the time of the accident, the plaintiffs were guest passengers in a vehicle owned and being driven by their son-in-law. The collision occurred as a result of the negligence of 17-year old Roger McGee, who was driving an automobile owned by his father. The McGees were uninsured. The insurance policy at issue was issued to the plaintiffs in Florida. This Court, applying the doctrine of Lex loci contractus, concluded that Florida law applied. This Court stated:
Generally the nature, validity and interpretation of an insurance contract is governed by the law of the place where made unless the parties clearly appear to have had some other place in view. Metropolitan Life Ins. Co. v. Haack, 50 F.Supp. 55 (W.D.La.1943). Thus it has been held that where a Mississippi automobile owner applied for an automobile liability policy which was executed and issued from the insurer's office in Mississippi, the contract contained in the policy was a Mississippi contract and the law of that State entered into it and became a part of it. Wheat v. White, 38 F.Supp. 796 (E.D.La.1941); see also City of Shreveport v. New York Life Ins. Co., 141 La. 360, 75 So. 80 (1917); Shiff v. Louisiana State Ins. Co., 6 Mart. (N.S.) 629 (La.1828); Lowery v. Zorn, 157 So. 826 (La.App.1934); Dainow, Variations on a Theme in Conflict of Laws, 24 La.L.Rev. 157 (1964).
Deane, 260 So.2d at 673.
However, this Court seemingly abandoned the rigid application of the Lex loci delicti in Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973). In that case, two Louisiana residents were involved in an accident in Mississippi. This Court set forth certain criteria useful in determining the plaintiff's contacts with each state. Namely, the Court noted that the record in the case revealed the following:
1. The plaintiff owned a home in Louisiana;
2. The plaintiff was registered to vote in Louisiana;
3. The plaintiff's car was registered in Louisiana;
4. The plaintiff's automobile insurance policy was issued to her by a Louisiana agency and was mailed to her at her Louisiana address;
5. The plaintiff had rented a dwelling in Mississippi because she desired to be near her 11-year old son, who was enrolled in the Gulf Coast Academy;
6. The plaintiff intended to return to Louisiana when she felt that her child could be left alone in school.
7. The plaintiff was employed in Mississippi and had been there for three months at the time of the accident.
8. The defendant was a resident of Louisiana, but he was enrolled as a student at a college in Texas.
9. At the time of the accident, the defendant was visiting the plaintiff, who was also his mother, in Mississippi.
This Court found that both the plaintiff and the defendant were domiciled in Louisiana and concluded that Louisiana law governed the action between the Louisiana domiciliaries, over interpretation of a Louisiana contract, stating, "When the foreign state has no interest in the application of its law in Louisiana litigation, we deem that the application of Louisiana law by Louisiana courts will contribute much greater predictability, certainty and constancy to the law." Jagers, 276 So.2d at 311. The Court classified the case as a "false conflict" case, as it was concluded that only a single state has an interest in the application of its law, and the other state has no interest in the application of its law in the case.
*788 In Sutton v. Langley, 330 So.2d 321 (La.App. 2nd Cir.1976), writs denied, 332 So.2d 805, 332 So.2d 820, the plaintiff, who was a resident of the State of Texas, was injured in an accident in Louisiana. One of the issues in the case was whether one of the plaintiff had the right to recover from her UM insurer, so the court considered the issue of whether Louisiana law or Texas law applied. Without any discussion of the plaintiff's contacts with each state or of the place of negotiation and formation of the insurance contract, the court concluded that Louisiana law applied. The court stated:
It cannot be said that this is a "false conflict" problem as was presented in Jagers, supra, because Texas does have an interest in protecting the awards of accident victims residing in that state. Louisiana governmental interest in governing awards of victims of accidents occurring on its highways and, more importantly, involving other Louisiana residents, must outweigh the Texas interests in our opinion. This is especially true when those out-of-state residents voluntarily choose Louisiana courts as the forum in which to assert their own interests.
Sutton, 330 So.2d at 327.
As noted above, in Zuviceh, Dreisel, Anderson, and Adams, supra, the court of appeal conducted a choice-of-law analysis and determined that the laws of the states in which the insurance policies were negotiated and formed and in which the vehicles covered by the insurance polices were garaged applied.
In the case sub judice, we note that there are profound competing public policies and interests between the states of Louisiana and Mississippi in this case. As stated above, the purpose of our UM legislation is to promote full recovery for innocent tort victims. Factors supporting Louisiana's strong interest in promoting full recovery for innocent automobile accident victims are: (1) there are economic interests involved, which include costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. Zuviceh v. Nationwide Ins. Co., XXXX-XXXX (La.App. 1st Cir.5/11/01), 786 So.2d 340, 345, writ denied, 2001-2141 (La.11/09/01), 801 So.2d 373. Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by Louisiana's statute. Id. at 345-346, quoting William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 119, p. 293, in Louisiana Civil Law Treatise (2nd ed.1996).
On the other hand, Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. See Zuviceh, 786 So.2d at 346.
In this case, plaintiff and Mississippi Farm Bureau entered into a contract of insurance that contained a reduction clause, which provided for the reduction of his UM coverage by the amount collected from the automobile bodily injury liability insurance covering the owner and operator of the underinsured vehicle. This agreement *789 was in the contemplation of the contracting parties, and the premium of $18.00 per six months for $10,000/ $20,000 of UM coverage for bodily injury caused by an underinsured driver was based on Mississippi Farm Bureau's potential exposure under the policy, with the reduction clause.
Our de novo review of the record establishes the following contacts with the State of Louisiana:
1. The accident occurred in New Orleans, Louisiana;
2. Defendant is a Louisiana resident;
3. Defendant's automobile liability insurance policy was issued to defendant in Louisiana;
Plaintiff's contacts with Mississippi include the following:
1. Plaintiff is a resident of Mississippi;
2. Mississippi is the place of negotiation and formation of the insurance contract;
3. The vehicle on which plaintiff purchased coverage is garaged, and presumably, registered in Mississippi;
4. Plaintiff's UM insurance policy is a Mississippi contract.
Under the facts of this case, we find that Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana. The application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract. Moreover, plaintiff's premium for UM coverage was based on the application of Mississippi law to the contract. Under a conflicts-of-laws analysis, we conclude that Mississippi's policies will be most seriously impaired if its law is not applied to the insurance policy.
Accordingly, we find that Mississippi Farm Bureau has met its burden of proving that Mississippi has a more substantial interest in this case, and plaintiff has failed to present factual support for his contentions. Therefore, Mississippi Farm Bureau is entitled to summary judgment as a matter of law.

CONCLUSION
For the reasons set forth herein, we reverse the lower courts' determinations that Louisiana law automatically applies to automobile accidents occurring in Louisiana. Under a choice-of-law analysis pursuant to La.C.C. arts. 3515 and 3537, we hold that Mississippi law applies.
REVERSED.
NOTES
[1] Mississippi Farm Bureau Casualty Insurance Company was incorrectly identified as Southern Farm Bureau Casualty Insurance Company in the original Petition for Damages.
[2] Section IV of the policy, entitled, "CONDITIONS (d)(2)" reads as follows:

In the event there is uninsured motorist coverage available, the total amount of uninsured motorist coverage available to an insured from all policies issued by Mississippi Farm Bureau Casualty Insurance Company shall be reduced by: (a) the total of all limits of liability insurance applicable to the uninsured motorist, whether paid or not to our insured; and (b) all sums paid to our insured on account of his bodily injury or property damage by or on behalf of the owner or operator of an uninsured motor vehicle, or by or on behalf of any person or organization who may be liable together with such owner or operator which are paid from the sources other than the liability insurance described in (a).
[3] Judge Tobias dissented from the decision to grant rehearing, opining that Mississippi Farm Bureau should not have been allowed to supplement the record with a copy of the insurance policy after a decision had been rendered.
[4] After commencement of the present suit, La. R.S. 22:1406(D) was redesignated as La. R.S. 22:680 by Act No. 456 of 2003, Section 3. However, the language of 22:1406(D)(1)(a)(iii) remains unchanged.
[5] During debate on this statute, a disagreement occurred regarding the issue of Louisiana law affecting contracts perfected in foreign jurisdictions. On May 20, 1987, in the House Commerce Committee, then Representative (now Senator) John Hainkel argued that the Louisiana Legislature could not reform contracts issued in other states. The bill's sponsor, Representative Charles Lancaster, asserted that when one is in Louisiana, he would have to comply with Louisiana law. Representative Carter stated it was just a matter of interpretation of which state's law would apply until the Supreme Court became involved.
[6] Many of the cases dealing with conflict of laws provisions refer to La. C.C. arts. 10 and 15. However, the revision comments to La. C.C. art. 14 states in part:

This Article replaces Civil Code Articles 14 and 15 (Redesignated 1987) which contained virtually all the choice-of-law rules of the Code. The new choice-of-law rules are now placed in a newly created Book IV of this Code, Arts. 3515 et seq., infra.
The Editor's note to La. C.C. art. 15, now blank, states in pertinent part:
Article 15 was previously Article 10 of the Louisiana Civil Code of 1870. It was redesignated as Article 15 by Acts 1987, No. 124 § 2.
[7] The 1900 case of Williams v. Pope Mfg. Co., 52 La.Ann. 1417, 27 So. 851, recognized the transitory nature of tort claims and the then established principle that in tort cases, the law of the place of wrong or where the right accrued governed (lex loci delicti).