# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-0462


DANA R. MCPHERSON

VERSUS

CINGULAR WIRELESS, LLC


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2006-0084-L
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.


**AFFIRMED.**


Christopher L. Zaunbrecher
Post Office Drawer 51367
Lafayette, LA 70505-1367
(337) 237-4070
COUNSEL FOR PLAINTIFF/APPELLANT:
     Dana R. McPherson

Phyllis G. Cancienne
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
301 N. Main Street, Suite 810
Baton Rouge, LA 70825
(225) 381-7000
COUNSEL FOR DEFENDANT/APPELLEE:
     Cingular Wireless, LLC

Jennifer McNamara

**Baker, Donelson, Bearman, Caldwell**
**& Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Cingular Wireless, LLC**

PETERS, J.

The plaintiff in this litigation, Dana R. McPherson, appeals the trial court's grant of a summary judgment dismissing her retaliatory discharge suit against her former employer and the defendant herein, Cingular Wireless, LLC (Cingular). For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The facts giving rise to this litigation are not in dispute. Prior to June 3, 2005, Ms. McPherson worked for Cingular at its Lafayette, Louisiana office. On that day, her area supervisor informed her that her employment with Cingular was terminated, effective immediately. She claims in her suit now before this court that her termination was in retaliation for her previous report to her employer that the same area supervisor had altered a time stamp on an electronic communication.

Cingular responded to Ms. McPherson's petition by filing, among other pleadings, a motion for summary judgment seeking dismissal of the suit on the basis that Ms. McPherson was an at-will employee and, therefore, her employment could be terminated at any time with or without cause. At the hearing on the motion, both sides relied on the language of a document entitled "Cingular's Code of Business Conduct" (Code of Conduct) in support of their respective positions. With regard to an individual's employment relationship, the Code of Conduct clearly establishes the at-will relationship with the following language:

> Cingular retains the right to dismiss any employee, at any time, for any reason, subject to agreements with employee unions.

> Cingular observes the employment at-will rule. The Company retains the right, subject to collective bargaining rights of union employees, to discharge any employee at any time for any reason, with or without cause, with or without notice, and without the need to comply with any plan or practice.

At-will employment *can be changed only in writing* and only in a document signed by both the Senior VP, Human Resources and the employee. At-will employment cannot be changed verbally, or by any Cingular policies. *Any contrary representation is invalid.*

(Emphasis added.)

With regard to its non-retaliatory policy, the Code of Conduct provides with equal clarity that:

Employees are encouraged to report any suspected illegal or unethical behavior within Cingular. This includes, but is not limited to, reporting securities fraud, fraudulent financial reporting and all other types of illegal activity. Employees who report this type of misconduct are protected by law against discrimination and/or adverse employment action for uncovering securities fraud and other illegal activity or otherwise assisting in any proceedings dealing with securities fraud and/or other illegal activity. Retaliation of such reporting made in good faith is strictly prohibited, and Cingular will take all necessary action to ensure that employees are free from reprisal. This includes termination of employment of the offender, and the offender may also be subject to civil/criminal legal action, where appropriate. We are committed to following the law and will not tolerate any conduct that jeopardizes our legal responsibilities.

Following a bench trial, the trial court signed a judgment which states:

After consideration of the authorities cited, the argument of counsel, the pleadings herein and the Cingular Code of Business Conduct, it is the finding of this Court that the Plaintiff was an "at-will" employee. The provisions of the Cingular Code of Business Conduct relating to the reporting of unethical conduct within Cingular did not modify her "at-will" employment status.

Cingular was free to terminate the employment of the Plaintiff at any time, even if the termination were related to her reporting of the conduct of another employee. Accordingly, Summary Judgment is granted in favor of Cingular and Plaintiff's suit is dismissed at Plaintiff's costs.

Thereafter, Ms. McPherson perfected this appeal.

**OPINION**

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is

2

appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. The inquiry is whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." *Id.* In this case, there are no material factual disputes. The only document offered in support of the motion for summary judgment was the Code of Conduct, and its contents, as well as the allegations of the petition, are clear. Thus, there are only questions of law before us. Appellate courts decide questions of law de novo. *Sabine Parish Police Jury v. Comm'r of Alcohol & Tobacco Control*, 04-1833 (La. 4/12/05), 898 So.2d 1244.

This court stated in *Leger v. Tyson Foods, Inc.,* 95-1055, p. 5 (La.App. 3 Cir. 1/31/96), 670 So.2d 397, 401, *writ denied,* 96-545 (La. 4/19/96), 671 So.2d 920, that:

> Under Louisiana law, when a person is employed for an indefinite period, he is an employee at will. *Brannan v. Wyeth Labs., Inc.*, 526 So.2d 1101 (La.1988). Under the doctrine of employment at will, the employer and employee are free to terminate the employment relationship at any time without cause. La.Civ.Code art. 2024.

However, as pointed out by the supreme court in *Quebedeaux v. Dow Chemical Co.*, 01-2297, pp. 4-6 (La. 6/21/02), 820 So.2d 542, 545-46:

> The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. . . . This default rule is contained in LSA-C.C. art. 2747.
>
> Under LSA-C.C. art. 2747, generally, "an employer is at liberty to dismiss an employee at any time for any reason without incurring

liability for the discharge." *See Williams v. Delta Haven, Inc.*, 416 So.2d 637 (La.App. 2nd Cir.1982). However, this right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. Morever, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers' compensation claims. Aside from the federal and state statutory exceptions, there are no "[b]road policy considerations creating exceptions to employment at will and affecting relations between employer and employee." *See Gil v. Metal Service Corp.*, 412 So.2d 706, 708 (La.App. 4th Cir. 1982).

(Footnotes omitted.)

Ms. McPherson acknowledges that her employment relationship was basically that of an at-will employee. Furthermore, she does not assert that the reason for her dismissal violates other federal or state laws. Instead, she argues that the provisions of the Code of Conduct were a part of her employment agreement, thus modifying the at-will relationship. Specifically, she asserts that the Code of Conduct modified that relationship in such a way as to protect her from retaliation when she, in good faith, reported a co-employee suspected of violating his employment obligation to Cingular. Thus, in evaluating this argument, we must determine whether the Code of Conduct became a part of the employment contract between Ms. McPherson and Cingular. After carefully examining the entire Code of Conduct, we conclude that it did not.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. *See Leger*, 670 So.2d 397. "Both parties must be bound in order for there to be a contract." *Id.* at 401. In this matter, we do not find that Cingular agreed to be bound by Ms. McPherson's interpretation of the whistle-blower protection language.

4

The Code of Conduct itself is divided into six sections and asserts on its cover page that the overall theme of the document is not that of expanding the at-will employment relationship, but that of "GUIDING [CINGULAR'S] REPUTATION." While we have reviewed the entire Code of Conduct, we find that the language of the first two sections resolves the issue concerning how it affects the at-will relationship of Cingular's employees.

The first section, which is entitled "OUR 'CINGULAR' RESPONSIBILITIES," begins with a one-page letter from Cingular's Chief Executive Officer addressed to his "Fellow Employee" wherein he states the importance of ethical behavior as it affects the reputation of the company. In the letter, he states that the Code of Conduct "provides basic guidelines to help [the employee] make ethical decisions" and provides "the general standards by which all Cingular employees . . . should assess the propriety of their actions." He further advises his fellow employees that "[a]ny failure on the part of an individual to meet the standards embodied in this Code can lead to disciplinary action, up to and including dismissal and criminal or civil sanctions."

The next section of the Code of Conduct contains both the employment at will and whistle-blower language previously quoted and is entitled "OUR PERSONAL COMMITMENT TO EACH OTHER AND THE BUSINESS." As previously stated, this section makes it absolutely clear that the employment relationship is an at-will relationship governed by that basic rule with no modifications. That section is equally clear that this relationship can only be modified by written agreement between the appropriate Human Resources official and the employee and specifically

5

stated that it "cannot be changed verbally, *or by any Cingular policies*," and that "[a]ny contrary representation is invalid." (Emphasis added.)

The whistle-blower language, on the other hand, does not specifically incorporate its perceived protection as an employment benefit. While requiring employee reporting activities as a condition of employment, it stops short of stating that protection against retaliation is an employment benefit. Instead, in the artfully drawn paragraph addressing this issue, it suggests that the reporting employee is "protected by *law* against discrimination and/or adverse employment action" and even then, only when the reporting is related to "securities fraud and/or other *illegal* activity." (Emphasis added.) While stating that "[r]etaliation of such reporting made in good faith is strictly prohibited," and that Cingular would "take all necessary action to ensure that employees are free from reprisal," it never suggests that the employment relationship would be protected.

The remainder of the Code of Conduct is equally noncommittal. The language in the second section, which addresses the employee's personal commitment to the Code of Conduct, reads as follows:

> The Cingular Code of Business Conduct is just a beginning; it is not possible to describe all unethical or illegal business practices in full detail. The best guidelines are individual conscience, common sense and unwavering compliance with all applicable laws, regulations and contractual obligations. *Corporate policy strictly forbids any retaliation against an employee who, in good faith, reports suspected wrongdoing.*

(Emphasis added.)

Other language found in the Code of Conduct, while *suggestive* of protection for the reporting employee, fails to modify the clear language that "Cingular retains the right to dismiss any employee, at any time, for any reason, subject to agreements with employee unions," and that it "observes the employment at-will rule." The letter from

6

the Chief Executive Officer found in the first section is followed in that section by the statement that "compliance with the [Code of Conduct] is a requirement of Cingular employment." That same section lists six specific employee responsibilities, one of which is that of "[r]eporting others who are engaged in conduct inconsistent with this Code."

Immediately after the employment at will language of the second section, the Code of Conduct states that "Cingular strictly prohibits all forms of unlawful harassment. Such conduct *may* result in disciplinary action, up to and including dismissal." (Emphasis added.) This section of the Code of Conduct also provides that an individual who is the victim of threats and violence in the workplace may not be fully protected because it only promises "effective remedial action" against the perpetrator which *could* (not shall) include dismissal. In fact, within all of the four commitment sections of the Code of Conduct, responsibility for unethical or otherwise improper conduct is placed on the same level of importance as responsibility for illegal conduct. Among the specific rules of conduct which it enunciates is a requirement that Cingular computer systems users protect company information from improper alteration, and instructs that users must not alter or destroy data, information, or files without authorization. Thus, it specifically prohibits an employee from doing what Ms. McPherson accused her area supervisor of doing: altering company data. Furthermore, reporting violations is declared to be a standard expected of every employee. The importance of reporting is underlined by this warning: "Remember that failing to report suspected violations is itself a violation."

Our careful review of Cingular's Code of Conduct causes us to conclude that the only thing set in stone is the policy that all employees are governed by the

unmodified at-will doctrine. While Cingular's artfully drawn language strongly implies protection, it is clear that Cingular never consented to making the whistle-blower protection a condition of the employment agreement. In fact, reporting wrongful conduct is simply one of the many responsibilities of employment. Absent the element of consent, Ms. McPherson's at-will contract was not modified by the language of the Code of Conduct.

We noted in *Leger*, 670 So.2d 397, that there exists no Louisiana jurisprudence in which an employee manual has been held to confer any contractual rights upon an employee or to create any exceptions to the employment-at-will doctrine. Our review of the jurisprudence since that 1996 decision reveals that there are still no such cases. We are unable to differentiate the Code of Conduct in the present case from a manual, or handbook, or set of guidelines, and this case, like *Leger,* provides no justification to change the established law of Louisiana with regard to employee handbooks.

We also emphasized in *Leger* that among the other reasons for finding no modification of the employment agreement was that the manual at issue therein contained a disclaimer that "the material contained in the manual was purely informational in nature and was not binding on [the employer]." *Id.* at 401. In the present case, the Code of Conduct's express reaffirmation of the at-will nature of employment is equally assertive of a disclaimer. In summary, our review of the Code of Conduct convinces us that it cannot be regarded as a modification of Ms. McPherson's terminable-at-will status. "The existence *vel non* of a contractual relationship is a question of law and not a question of fact, and therefore, it is a proper basis for the granting of a motion for summary judgment." *Id.* at 402. We find no merit in Ms. McPherson's first argument.

8

Ms. McPherson next asserts that, even if the Code of Conduct is not a part of the employment contract, there exists a material issue of fact as to her justifiable reliance, to her detriment, on Cingular's commitment to its policy prohibiting any retaliation against any employee who reports wrongful conduct. We find no merit in this argument.

Louisiana Civil Code Article 1967 provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." To establish detrimental reliance, a party must prove three elements: (1) a representation by word or conduct; (2) justifiable reliance; and (3) a change in position to one's detriment because of that reliance. *Suire v. Lafayette City-Parish Consol. Gov't,* 04-1459, 04-1460, 04-1466 (La. 4/12/05), 907 So.2d 37. The doctrine of detrimental reliance is not favored by Louisiana law, and all claims must be examined strictly and carefully. *Moroux v. Toce*, 06-831, 06-832 (La.App. 3 Cir. 11/2/06), 943 So.2d 1263, *writ denied*, 07-117 (La. 3/16/07), 952 So.2d 698. Cingular's burden on the motion for summary judgment did not require it to negate all three essential elements of Ms. McPherson's alternative claim of detrimental reliance, but rather to point out to the court that there was an absence of factual support for one or more elements essential to her claim. La.Code Civ.P. art. 966(C)(2).

As we previously stated, the Code of Conduct did not contain a promise to protect an at-will employee against discharge for complying with the responsibilities of employment. It merely enunciated its policy forbidding retaliation against an employee for reporting wrongdoing. Ms. McPherson could not reasonably have

9

relied on that policy, as it was expressed in terms of a commitment to guide or protect the reputation of Cingular and not as a promise to protect her against discharge for complying with that responsibility of her employment. Ms. McPherson's subjective expectation that Cingular would extend its policy forbidding any retaliation against an employee reporting wrongdoing to the point of protection against discharge for that reason was not reasonable. Ms. McPherson has failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial to recover under the theory of detrimental reliance, and there is thus no genuine issue of material fact remaining as to this issue. Equitable estoppel is not an alternative remedy available to Ms. McPherson in this case.

### DISPOSITION

For the foregoing reasons, we affirm the trial court's grant of the summary judgment in favor of Cingular Wireless, LLC, dismissing the demands of Dana R. McPherson. We assess all costs of this appeal to Dana R. McPherson.

**AFFIRMED**.