GASKINS, J.
hThe parents of a deceased occupant involved in a one-car accident appeal from a trial court ruling granting summary judgment in favor of the surviving occupant and. the car’s insurer on the basis that the deceased occupant was driving at the time of the accident. We reverse and remand.
FACTS'
In the late night hours of June 5, 2002, or the early morning hours of June 6, 2002,[1] 16-year-old Jodi Tatum and 19-year-old Ashley Shively were in a one-car accident while traveling on Louisiana Highway 128 in Tensas Parish. The car, a 2001 Pontiac Grand Am which was owned by Jodi’s grandmother, Odelle Tatum, rolled over several times. Jodi was ejected from the vehicle and sustained injuries, including a crushed pelvis, which were ultimately fatal. Ashley was found in the passenger seat; she survived her injuries but had no memory of the accident or the events immediately before it.
On June 4, 2003, Jodi’s parents, Jefferi Ryals and Willie Tatum, Jr., filed suit in Franklin Parish against Ashley, who they alleged was driving at the time of the accident, and State Farm Mutual Automobile Insurance Company, which provided insurance for the vehicle. Also sued were Travis Grace and Greg Whitaker, adults who allegedly supplied the girls, both of whom were under the legal drinking age, with alcohol during the day of June 5, 2002, while boating on Lake Bruin. The plaintiffs further alleged that Ashley gave Jodi alcohol or allowed or encouraged her to drink it.
I Jn her answer, Ashley admitted that the men had given alcohol to her and Jodi. However, she stated that Jodi had been driving at the time of the accident. In an answer filed on behalf of Ashley and State *483 Farm, State Farm admitted issuing an insurance policy to Kevin McMurray and Odelle Tatum. In an amending and supplemental answer, they asserted that the State Farm policy excluded coverage for the plaintiffs’ claim that Ashley gave Jodi alcohol.
In January 2006, State Farm and Ashley filed a motion for summary judgment. They asserted that the deposition testimony and reports of all the investigating police officers concluded that Jodi was the driver and that Ashley was only a passenger in the car owned by Jodi’s grandmother. As such, Ashley owed no duty to Jodi. In support of their motion, the movants cited the testimony of Senior Trooper James Richardson, who was trained in accident reconstruction. He concluded that Jodi’s final resting place at the accident scene was consistent with her being ejected through the driver’s side window and that several factors, including the design of the vehicle, made the occurrence of a “crossover” — Ashley ending up in the passenger seat if she had been driving — “very unlikely.” Deputy John Mathews of the Tensas Parish Sheriffs Office, who had investigated at least 500 accidents during his lengthy law enforcement career, was the first officer on the scene and he opined that Jodi was the driver. He also testified in his deposition that he had been informed of a prior incident by Deputy Don McDuffy of the Franklin Parish Sheriffs Office in which Jodi had been driving her grandmother’s car without a driver’s license. Trooper Floyd McElroy, who|swas also at the accident scene, determined that the accident was caused by Jodi’s careless operation of the car. When Jodi’s family claimed that Jodi was not the driver, Senior Trooper Richardson and Trooper McElroy reexamined the matter. The review included looking at the injuries sustained by the surviving occupant and examining the seat belts in the car. They concluded again that Jodi was, in fact, the driver. Additionally, Trooper McElroy spoke to Deputy McDuffy, who recounted stopping the girls a week before the accident; Jodi, who had no driver’s license, was driving the car on that occasion.
The movants also presented deposition testimony from two of the men who had been boating with the girls the afternoon before the accident and who parted company with them before the accident. Travis Grace stated that he, last saw the girls walking down a driveway. Mead Hard-wick said he did not recall which girl was driving when they departed.
The plaintiffs filed an opposition to the motion for summary judgment. In support of their argument that Ashley was driving at the time of the accident, they submitted excerpts from Ashley’s deposition in which she admitted driving the car in the past and a cell phone video that showed Ashley driving the car at night. They also contended that Ashley was three inches shorter than Jodi and that the driver’s seat was closer to the dashboard than the passenger seat. In a deposition excerpt, Joseph Brown, another man who went boating with the girls before the accident, described the brunette as “kind of short,” while the “blonde was kind of tall.” According to him, the brunette, who was shorter, got in the driver’s seat 14when they left. (However, he also stated that the taller girl was “[t]he blonde, Ashley.”)[2]
The plaintiffs also asserted that the injuries sustained by the girls indicated that Jodi was an ejected passenger whose pelvis was crushed by the car when it rolled *484 over her. They maintained that Ashley’s injuries were consistent with driver side restraints and airbag injuries, as well as hitting the steering wheel. Other factors they pointed to were Ashley’s driver’s license being found at the scene, the passenger side window being down, and Ashley being found in the passenger seat without a seat belt. The plaintiffs reiterated their allegations that Ashley contributed to Jodi’s delinquency by allowing, giving or encouraging intoxicants. They further urged that even if Ashley was just a passenger, she should not have let Jodi drive if she was intoxicated.
The movants responded with another excerpt from Joseph Brown’s deposition in which he recounted hearing that the brunette girl had died and that it was possible that he could have been mistaken about who was driving.
On May 15, 2006, the motion for summary judgment was argued and taken under advisement. On August 30, 2006, the trial court issued written reasons and granted summary judgment in favor of Ashley and State Farm. The trial court found that all of the expert opinion testimony by qualified and disinterested personnel indicated that Jodi was driving at the time of the 1^accident. The court noted that at trial the plaintiffs will have the burden of proving who was driving and that they presented no expert testimony to rebut that put forth by the movants. Instead, the court found that the plaintiffs merely offered arguments interpreting the facts differently. The trial court also found that the plaintiffs failed to show that Ashley had any duty to supervise Jodi or that Ashley supplied Jodi with alcohol. Judgment in conformity with the written reasons was signed December 8, 2006.
The plaintiffs appeal.
SUMMARY JUDGMENT

Law

Appellate courts review summary judgments de novo using the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Huston, Louisiana, Inc., 40,546 (La.App.2d Cir.1/25/06), 920 So.2d 355.
I r,The burden of proof is on the movant. If, as in this case, the moving party will not bear the burden of proof at trial on the matter before the court on the motion and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must come forward with factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Foshee v. Louisiana Farm Bureau Casualty Insurance Company, 41,842 (La.App.2d Cir.1/31/07), 948 So.2d 1171, writ denied, 2007-0483 (La.4/20/07), 954 So.2d 169.
Summary judgment should be denied if there is (1) a genuine issue of fact and (2) *485 it is material to the case. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. A “genuine issue” is a “triable issue,” an issue in which reasonable persons could disagree. Champagne v. Ward, 2003-3211 (La.1/19/05), 893 So.2d 773. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002. In determining whether an issue is “genuine,” courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Suire v. Lafayette City-Parish Consolidated Government, 2004-1459 (La.4/12/05), 907 So.2d 37. A “material” fact is one that would matter on the trial on the merits. Smith v. Our Lady of the Lake Hospital, Inc., supra.
| tDiscussion
The identity of the driver in this case involving a one-car accident is obviously “material.” The primary question is whether it is “genuine.” After a careful review of the evidence submitted both for and against summary judgment, we conclude that it is.
In support of their motion for summary judgment, the appellees relied upon the testimony of three law enforcement officers who were present at the scene. Although all three of them opined that Jodi was the driver, they were not universal in their observations and conclusions concerning the accident.
Senior Trooper Richardson and Trooper McElroy both arrived at the scene after the girls were transported to the hospital. They stated that Jodi was found east of the car’s final resting spot, and the crash report written by Trooper McElroy so reflected. This indicated to Senior Trooper Richardson, an accident reconstruction expert, that Jodi was ejected from the driver’s window. According to him, had she been ejected from the passenger’s window, she would have come to rest in the debris trail west of the vehicle’s final resting spot. He excluded the rear window as a potential ejection point.
Deputy Mathews, the first law enforcement officer at the accident site, was present when Jodi was found. According to both his incident report and his deposition testimony, she was discovered west of the car’s final resting spot. We note that such a location would place her in the car’s debris trail which, according to Senior Trooper Richardson’s analysis, | ¿would indicate that she was ejected through the passenger’s window. Although Deputy Mathews was not an accident reconstruction expert, he had worked at least 500 car accidents during his law enforcement career. In his opinion, Jodi was ejected through the back window, which was broken out like the side windows.
Although the coroner’s report indicated that no autopsy was initially performed, it concluded that Jodi suffered closed head injuries and a fractured pelvis. Jodi’s body was subsequently exhumed in August 2002, and an autopsy was performed at that time. The autopsy report stated that she died of a spinal cord injury and that she suffered “severe crushing injuries of the pelvis, indicating that the vehicle passed over her after she was ejected.”
The point from which Jodi was ejected is of paramount importance in this case because it will indicate whether or not she was driving at the time of the accident. The exact location where she was found at the accident scene is thus of great significance. Given the conflicts in the evidence as to the location of the spot where Jodi came to rest after the accident and the credibility calls necessary to resolve these conflicts, we find that summary judgment was not appropriate in this case at this *486 juncture. Accordingly, we reverse the trial court ruling granting summary judgment in favor of Ashley Shively and State Farm Mutual Automobile Insurance Company.
^CONCLUSION
The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the appel-lees.
REVERSED AND REMANDED.

. The exact time of the accident is unknown. The girls left a group of friends around 9 p.m. A watch found at the accident scene was stopped at about 9:10 p.m. The wrecked car was not found until approximately 1 a.m.

. In Jodi’s autopsy report, her height is given as 5' 10" and her hair is described as blonde; in the coroner’s report, her hair color is given as brownish-blond. In her deposition, Ashley gave her own height as 5' 7" and she said that Jodi was a little bit taller than her.