907 So.2d 122 (2005)
Austin Dwayne DUNLAP
v.
HARTFORD INSURANCE COMPANY OF THE MIDWEST and Zurich American Insurance Company.
No. 2004 CA 0725.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
T. Carey Wicker, III, Capitelli & Wicker, New Orleans, for Plaintiff-Appellee Austin Dwayne Dunlap.
Todd L. Lacoste, John J. Erny, III, Metairie, for Defendant-Appellee Hartford Ins. Co. of the Midwest.
Donna Bramlett Wood, Kyle P. Kirsch, Lynda A. Tafaro, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, for Defendant-Appellant Zurich American Ins. Co.
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
Zurich American Insurance Company (Zurich) appeals a judgment denying its request for a declaratory judgment, granting a motion for partial summary judgment in favor of Austin Dwayne Dunlap, and holding that Louisiana law, rather than Michigan law, applies to the business automobile insurance policy at issue, which therefore must provide uninsured/underinsured motorist coverage equal to the liability limits of the policy. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Austin Dwayne Dunlap, a Louisiana resident, was injured in an automobile accident *123 when he was run off a road in St. Tammany Parish, Louisiana, by an unidentified "phantom" vehicle while in the course and scope of his employment with Angelo Iafrate Construction, L.L.C. (Iafrate).[1] Iafrate is domiciled in Michigan, and there acquired a business automobile liability and uninsured/underinsured motorist (UM) policy with Zurich; the policy was issued and delivered in Michigan.[2] Iafrate is a construction company with contracts for highway and other major construction projects in thirty-eight states, including Louisiana. Its nationwide fleet of vehicles was covered on the Zurich policy, which had liability limits of $1 million, but UM limits of only $40,000. The policy's provisions comported with Michigan law; however, the UM waiver/rejection form required by Louisiana law had not been executed to select UM limits lower than the liability limits. The vehicle being driven by Dunlap was owned by Iafrate, had liability coverage under the Zurich policy, and was registered, garaged, and licensed in Louisiana. As an Iafrate employee who was driving the vehicle with Iafrate's permission in the course and scope of his employment, Dunlap was an insured under the Zurich policy. Dunlap filed suit against Zurich for UM coverage and against his own UM insurer, Hartford Insurance Company of the Midwest (Hartford),[3] which, under Louisiana law, would be required to pay only if Zurich's limits were first exhausted.[4] Zurich filed a petition for declaratory judgment, claiming Michigan law should be applied to interpret the policy provisions regarding UM coverage and limits. Dunlap then filed a motion for partial summary judgment, claiming Louisiana law should be applied and that, since no valid selection of lower UM limits had been made under Louisiana law, UM coverage had to be provided in an amount equal to the liability limits of the Zurich policy.[5] After a hearing, the court denied Zurich's request for declaratory judgment and granted Dunlap's motion for partial summary judgment, ruling that Louisiana law applied and the Zurich policy had to provide UM coverage equal to the $1 million liability limits. The judgment was designated as final for purposes of appeal. The only issue on appeal is whether Michigan law or Louisiana law should apply to the UM provisions and limits of the Zurich policy under the factual circumstances of this case.

ANALYSIS
In all automobile liability insurance policies delivered in this state covering vehicles registered in this state, Louisiana law requires UM coverage in the same amount as the bodily injury liability coverage, unless the insured or his authorized representative expressly rejects the coverage or selects lower limits on a specific *124 form designated for that purpose. See LSA-R.S. 22:1406(D). Louisiana Revised Statute 22:1406(D)(1) clearly states that its provisions concerning UM insurance are applicable to auto liability policies "delivered or issued for delivery in this state. . . ." Therefore, although Louisiana's UM law can be applied to foreign insurance policies in multistate cases when the accident occurs in Louisiana and involves a Louisiana resident, the provisions of LSA-R.S. 22:1406(D) do not apply automatically; rather, the court must conduct a choice-of-law analysis to determine which state's law should be applied. Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, 777; Dreisel v. Metropolitan Prop. & Cas. Ins. Co., 01-2705 (La.App. 1st Cir.12/20/02), 836 So.2d 347, 350, writ denied, 03-0199 (La.3/28/03), 840 So.2d 575; Zuviceh v. Nationwide Ins. Co., 00-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340, 345, writ denied, 01-2141 (La.11/9/01), 801 So.2d 373.
In conducting that analysis, the provisions of Louisiana Civil Code articles 3515 and 3537 are used, both of which confirm in introductory paragraphs that the objective of the choice-of-law process is to identify the state whose policies would be most seriously impaired if its law were not applied to the particular issue involved in the lawsuit. According to the general provisions of LSA-C.C. art. 3515:
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Additionally, LSA-C.C. art. 3537 provides that for conventional obligations:
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Zurich contends the focus of the court's analysis should be on the parties to the contract, Zurich and Iafrate, rather than the parties to the lawsuit or occurrence, which would include Dunlap. We disagree with this contention, noting first that Article 3515 instructs the court to examine the relationship of each state to the parties and the dispute, and Article 3537 invites analysis of the nature, type, and purpose of the contract, as well as the policies referred to in Article 3515. In this case, we are examining an automobile liability insurance contract, the purpose of which is the protection of one of the contracting parties, Iafrate, from economic loss as a result of automobile accidents involving its vehicles. But another purpose of the contract is to protect all insureds under the policy from those losses, including Iafrate's employees while using Iafrate's vehicles with Iafrate's permission. As an insured under the policy, therefore, Dunlap's relationship to the state, the occurrence, the contract, and the dispute is also relevant to the choice-of-law analysis.
*125 With that in mind, and applying the precepts set out in Articles 3515 and 3537, we evaluate the various strands connecting the parties to Michigan and to Louisiana in this case. According to documents in the record, Iafrate is a Michigan corporation engaged in business operations in thirty-eight states nationwide. It was authorized to do and has been doing business in Louisiana since 1995 as a licensed commercial contractor on highway and other major construction projects in this state. Iafrate maintains offices in New Orleans, Kenner, Metairie, and Baton Rouge. By seeking and obtaining licensing and certification as a commercial contractor in Louisiana, Iafrate has been afforded the protection of and agreed to be governed by Louisiana law as it affects its extensive business operations in this state. Therefore, Iafrate should justifiably expect that various Louisiana laws will be applied to some or all of its Louisiana business, even though the company is domiciled in Michigan and negotiates and executes contracts from its home office there. This is particularly true when the objects of the contract  in this case, automobile liability insurance coverage  are to protect from liability the Michigan corporation and the employee who is a Louisiana resident, both of whom are insured under the policy, as well as to provide coverage for any of Iafrate's vehicles that may be registered, licensed, garaged, and used in Louisiana.
Dunlap, a Louisiana resident, worked for Iafrate from 1997 to 1999, and from March 2001 until the accident in May 2002. Dunlap was in the course and scope of his employment with Iafrate when the accident occurred; the pickup truck he was driving was owned by Iafrate and was registered, licensed, and garaged in Louisiana. Dunlap is an insured under the Zurich policy, and the truck was a covered vehicle under the policy. The accident occurred in Louisiana, and all of Dunlap's medical treatment related to the accident has been and probably will continue to be provided by doctors and hospitals in Louisiana. Other than being employed by a company whose home office is in Michigan, Dunlap's only contacts are in Louisiana and he would expect to be protected by its laws, including Louisiana's strong public policy to promote full recovery for innocent accident victims. See Champagne, 893 So.2d 773.
The Zurich policy was negotiated and purchased by Iafrate from an insurance agency in Michigan and was mailed to its Michigan office. Policy premiums are invoiced and paid in Michigan; the premium amounts are based on the potential exposure to Zurich and the negotiated coverage afforded to Iafrate. The Zurich policy covers all Iafrate vehicles, wherever they are registered, licensed, garaged, or used. The coverage territory includes the United States of America, its territories and possessions, Puerto Rico, and Canada. The policy has endorsements for broadened collision coverage, property protection, uninsured motorists coverage, and personal injury protection that modify those types of coverage for covered automobiles licensed or principally garaged in Michigan. It does not contain a rejection or selection of lower limits form required by Louisiana law for UM coverage. Although its provisions conform to Michigan law, the policy itself does not specify which state's law is to be applied to the interpretation of its provisions, and it has provisions whereby other states' laws will be recognized and applied under certain circumstances. For instance, the liability portion of the policy states that while a covered auto is away from the state where it is licensed, the coverage amounts and types will be extended and increased to provide whatever minimum coverage is required by the jurisdiction where the covered auto is being *126 used.[6] Under these circumstances, the policy itself demonstrates that Zurich and Iafrate anticipated that Iafrate would be conducting business in many states other than Michigan; that the policy would cover Iafrate-owned vehicles licensed, used, and garaged in other states; that residents of many other states would be employed by Iafrate, would be using its vehicles, and would be insureds under the policy; and that the laws of other states might be applied to modify the terms of the policy. We believe this knowledge on the part of both Iafrate and Zurich must have informed and influenced their negotiations and decisions concerning policy premiums and coverage limits.
On the other hand, we acknowledge that Michigan has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts of that business. The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. See Zuviceh, 786 So.2d at 346. However, Michigan's interests are not directly involved when an automobile accident happens in Louisiana, a Louisiana resident is the only accident victim, the vehicle owner maintains offices and conducts extensive business operations in Louisiana, and the insured vehicle is registered, licensed, and garaged in Louisiana. In such a case, Michigan's only interest is to be sure the company issuing the policy fulfills its contractual obligation to the insureds under that policy, whatever that obligation may be. The application of Louisiana law to determine the extent of that obligation and to recognize Louisiana's strong public policy to fully recompense the innocent accident victim does not really conflict with Michigan's interests in this case. See Jagers v. Royal Indem. Co., 276 So.2d 309, 311 (La.1973).
We note also that this case is readily distinguishable from the Zuviceh, Dreisel, and Champagne cases. Those cases all involved out-of-state residents, whose personal vehicles were registered, licensed, and garaged in another state, and who were seeking coverage under their own out-of-state policies for injuries they suffered in accidents in Louisiana. In those situations, before the accident occurred, neither the insurer nor the insured had reason to seek the protection of Louisiana's laws, and nothing in the policies indicated that the parties contemplated the application of other states' laws relative to accidents occurring in other states. In contrast, the liability policy in this case provided commercial coverage for a fleet of vehicles used nationwide, in which the vehicle owner and insurer could readily anticipate that another state's laws might apply, and in which the policy itself reflects that expectation. Moreover, the vehicle owner and insurer in this case also knew that residents of other states would be insured under the policy and the vehicles they were driving would be registered, licensed, garaged, and principally used in *127 other states. Finally, in this case, the named insured had a substantial commercial presence in the state of Louisiana and received the benefits of Louisiana laws by maintaining offices here and conducting business here.
For these reasons, we conclude that Louisiana's interests in applying its UM laws in this case outweigh whatever interests Michigan might have under these circumstances.

CONCLUSION
The judgment of the district court, denying Zurich's petition for a declaratory judgment, granting Dunlap's motion for partial summary judgment, and decreeing that the Zurich policy must provide UM coverage equal to the liability limits of one million dollars, is affirmed. All costs of this appeal are assessed against Zurich.
AFFIRMED.
NOTES
[1] Because he was in the course and scope of his employment when the accident occurred, Dunlap received workers' compensation benefits and his medical expenses were paid.
[2] The declarations page of the certified copy of the policy in the record shows the policy was "produced" by a Michigan insurance agency and mailed to Iafrate at a Michigan address.
[3] The Hartford policy had UM limits of $100,000.
[4] See LSA-R.S. 22:1406(D)(1)(c)(ii). LSA-R.S. 22:1406(D) was amended by 2003 La. Acts, No. 456, §§ 1 and 2, and was re-designated as LSA-R.S. 22:680 by § 3 of that act. Because all of the operative facts underlying this lawsuit occurred before that revision and re-designation, we will use the former statutory provisions and designation in this opinion.
[5] LSA-R.S. 22:1406(D).
[6] See Francis v. Travelers Ins. Co., 581 So.2d 1036, 1042 (La.App. 1st Cir.), writs denied, 588 So.2d 1114 (La. 1991) and 1121 (La. 1991) (noting the out-of-state extension provision and the nationwide territory of the policy indicate the insurer knew other states' laws might be applied); but see Rains v. Jones, 38,977 (La.App. 2nd Cir.12/22/04), 890 So.2d 747, 752 (stating that because the out-of-state coverage extension was in the liability portion of the policy, it could not be read to anticipate the application of another state's UM laws, when the insured accident victims were not Louisiana residents and were seeking coverage under their Missouri policy covering their personal vehicle registered and principally used in Missouri).