13 So.3d 649 (2009)
Gregory TRICHE and Donna Triche
v.
Dwight MARTIN, Cherokee Insurance Company, Lincoln General Insurance Company, and State Farm Mutual Automobile Insurance Company.
No. 2008 CA 1220.
Court of Appeal of Louisiana, First Circuit.
May 8, 2009.
Charles S. Long, Donaldsonville, LA, for Plaintiffs/Appellees, Gregory & Donna Triche.
W. Paul Andersson, J. Roumain Peters, III, Raymond R. Egan, III, New Orleans, LA, for Defendant/Appellant, Cherokee Insurance Company.
Allen C. Dobson, Little Rock, AR, Pro hac vice.
Before CARTER, C.J., WHIPPLE, GUIDRY, PETTIGREW, and DOWNING, JJ.
DOWNING, J.
Defendant, Cherokee Insurance Company, appeals from an amended judgment of the trial court, granting in part and denying in part its motion for summary judgment and granting the motion for summary judgment filed by plaintiffs, Gregory and Donna Triche. For the following reasons, we reverse in part and affirm in part.

FACTS AND PROCEDURAL HISTORY
On June 24, 2005, Gregory Triche and Dwight Martin were involved in an automobile accident in Little Rock, Arkansas. At the time of the accident, Triche was a passenger in a 1990 Chevolet SUV privately owned and operated by Martin. Triche and Martin, both residents of Louisiana, were independent truck owner/operators and had contracted with Central Hauling Company ("Central Hauling") of Little Rock, Arkansas, to haul cargo and freight *650 across the country. Triche and Martin had also entered into lease-purchase agreements with Arkansas Equipment Leasing, Inc. of Mabelvale, Arkansas, for the lease-purchase of their trucks.
On the date of the accident, Triche and Martin left their trucks and trailers at the Central Hauling "yard" in Little Rock, Arkansas, and were going to get lunch in Martin's personal vehicle while their trucks were being loaded. As Martin's vehicle entered the interstate highway, another vehicle collided with it, causing Martin's vehicle to flip several times, resulting in severe injuries to Triche. Martin did not have any insurance on his personal vehicle. However, Central Hauling had procured two policies from Cherokee Insurance Company ("Cherokee") for its drivers, which were in effect at the time of the accident: (1) a Commercial Auto Liability Policy (CA050025); and (2) a Commercial NonTrucking Auto Liability Policy or "bobtail policy" (BT050007).[1]
On April 10, 2006, Triche and his wife, Donna, (hereinafter "plaintiffs") filed the instant suit seeking to recover for injuries and damages sustained as a result of the accident. Thereafter, plaintiffs moved for summary judgment, contending that Triche was covered under the Cherokee policy and that the UM limits of $50,000.00 should be determined to be equal to the liability limits of $1,000,000.00, due to the lack of a knowing and intelligent waiver or selection by Triche of the lower $50,000.00 limits under Louisiana law.[2]
Cherokee countered with a cross-motion for summary judgment, contending that there was no UM coverage under the Cherokee policy available to the plaintiffs in this case. Alternatively, Cherokee contended that should the court find that there was UM coverage under the policy, any recovery would be limited to $50,000.00 as stated in the policy. Cherokee further contended that when considering the issue of UM coverage under Cherokee's policy, the court should apply Arkansas law.
At the conclusion of a hearing, the trial court granted the motion for summary judgment in favor of plaintiffs and issued written reasons for judgment. Thereafter, a written judgment was signed on October 22, 2007 granting plaintiffs' motion for summary judgment.[3]
*651 On January 3, 2008, the trial court signed an amended judgment in accordance with its October 22, 2007 judgment wherein it ordered: (1) that plaintiffs were not precluded from recovery against Cherokee's bobtail policy pursuant to La. R.S. 22:680(l)(c)(ii)(bb), the Louisiana Anti-Stacking statute, as plaintiffs had returned an unconditional tender from State Farm in the amount of $50,000.00 and instead chose to seek recovery under Cherokee's bobtail policy; (2) that Cherokee's motion for summary judgment was granted in part, inasmuch as the court found that there was no coverage available under Cherokee's Commercial Auto Liability Policy, but was denied to the extent that Cherokee sought judgment as a matter of law decreeing that plaintiffs were precluded from recovering under its bobtail policy; and (3) designating the judgment as final and appealable in accordance with La. C.C.P. art. 1915(B)(1).
Cherokee filed the instant appeal from the judgment of the trial court,[4] contending that the trial court erred in: (1) applying Louisiana law to the bobtail policy to change the UM limits from $50,000.00 to $1,000,000.00; (2) finding that Louisiana law applied, rather than Arkansas law, after conducting its conflicts of law analysis; and (3) finding that Triche had not already made a designation to accept UM/UIM funds from State Farm, and that he was not precluded under La. R.S. 22:680 and its anti-stacking provisions from making a claim against the Cherokee bobtail policy.

DISCUSSION

Standard of Review
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Walker v. Phi Beta Sigma Fraternity (Rho Chapter), 96-2345 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528. Thus, we must determine whether the documents introduced in evidence establish that plaintiffs *652 are entitled to judgment in their favor as a matter of law under the applicable substantive law. See Gray v. American Nat. Property & Casualty Co., 07-1670 (La.2/26/08), 977 So.2d 839, 844.

Assignments of Error Numbers One and Two
In these two assignments, Cherokee contends that the trial court erred in finding that Louisiana law applied herein rather than Arkansas law and in applying Louisiana law to erroneously determine that the UM policy limits are $1,000,000.00. We find merit in these assignments of error.
While the trial court conducted a thorough conflict-of-laws analysis in deciding to apply Louisiana law here, it committed legal error in so doing. It failed to properly interpret and apply the provisions of Louisiana's uninsured/underinsured motorists (UM) law, former La. R.S. 22:680, which has been renumbered as La. R.S. 22:1295.[5] This statute provides in pertinent part:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(l)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; . . .
. . . .
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
(Emphasis added.)
We first note that "the statute is limited by the introductory language . . . which states that the statute `shall apply to the issuance of uninsured motorist coverage in this state.'" Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, 785-86. "The introductory language is clear and unambiguous and does not lead to absurd consequences." Id., 893 So.2d at 786. Here, the policy under consideration was not issued for coverage in Louisiana. Second, section 1(a)(i) of the statute limits its application to policies delivered or issued for delivery in Louisiana. Here, the policy under consideration was not delivered or issued for delivery in Louisiana. Third, section l(a)(iii) plainly states that the statute's application is limited to accidents occurring "in this state" involving a resident of this state. The accident at issue did not occur in Louisiana.
"When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superfluous *653 or meaningless should be avoided." Id. Accordingly, we conclude from the statute's language that La. R.S. 22:1295 is not applicable to the policy at issue and that the trial court erred in employing Louisiana's UM law to find coverage for the Triches.
Finding merit in Cherokee's first and second assignments of error, we will accordingly reverse the summary judgment that granted the Triches' motion for summary judgment. We will also reverse the judgment rendered in favor of the Triches that determined that they were not precluded from recovery against Cherokee under Louisiana's UM law, La. R.S. 22:1295, under policy no. BT05007.[6]
In so ruling, we observe that conflict-of-laws analysis can be appropriate in circumstances where an accident occurs in Louisiana involving Louisiana residents and out-of-state motorists. See Champagne, 893 So.2d at 786-88. But by the statute's own terms, it is inapplicable to the matter before us.

Assignment of Error Number Three
In this assignment of error, Cherokee argues that plaintiffs are precluded from recovery against any other UM/UIM policy that plaintiffs may have access to because they had already elected to recover, "and have recovered," $50,000.00 in UM/UIM coverage from State Farm. We agree that the Triches were not entitled to entry of summary judgment on this issue.
As discussed above, La. R.S. 22:1295 is inapplicable to the matter before us. Accordingly, we conclude that the trial court erred in applying La. R.S. 22:1295(1)(c)(ii)(bb),[7] Louisiana's anti-stacking provision, to the dispute over whether the Triches were entitled to return an unconditional tender and pursue a recovery under a different policy. Accordingly, we will reverse the entry of summary judgment in favor of the Triches on this issue, and we pretermit discussion of the merits of the issue.

DECREE
After our de novo review of the record, and considering the relevant law and jurisprudence, we conclude that the trial court erred in granting summary judgment in favor of the Triches, who were not entitled to summary judgment as a matter of law finding coverage under Cherokee's bobtail policy. Thus, for the above and foregoing reasons, the January 3, 2008 amended judgment of the trial court and the November 22, 2007 judgment are reversed insofar as they grant recovery to the Triches on their motion for summary judgment. In all other respects the amended judgment is affirmed. Costs of this appeal *654 are assessed against Gregory and Donna Triche.

REVERSED IN PART; AFFIRMED IN PART.
GUIDRY, P., concurs.
WHIPPLE, J., dissents and assigns reasons.
WHIPPLE, J., dissenting.
I respectfully disagree with the majority's opinion that a conflict of laws analysis is unnecessary in this matter. Given the particular facts of this case, the policy at issue, and the significant contacts with Louisiana, I would find the trial court correctly determined that Cherokee's bobtail policy afforded the Triches coverage herein.
In its thorough written reasons for judgment, the trial court noted that Cherokee had numerous contacts with the State of Louisiana and had purposefully availed itself of the laws of Louisiana, having been "registered" to write vehicle insurance in Louisiana since 1972. Thus, the trial court found that "application of Louisiana law to an insurance company that is required by statute to adhere to Louisiana law to write vehicle liability insurance to Louisiana should be no surprise, nor unfair." After reviewing the evidence, the trial court concluded that Triche had significant contacts with Louisiana, in that he was a resident of Louisiana and he was treated in Louisiana for injuries sustained in the accident. The trial court further noted that Central Hauling likewise had significant contacts with Louisiana, in that: (1) Central Hauling is an Arkansas corporation engaged in business in the forty-eight contiguous United States; (2) Central Hauling specifically purchased bobtail insurance on behalf of Triche to cover him when he was in Louisiana at his home and not hauling a load for Central Hauling to protect Central Hauling; and (3) Central Hauling has numerous business contacts with Louisiana. Specifically, these contacts included Central Hauling's maintenance of a drop yard in Port Allen, Louisiana, and its transportation of goods to and from Exxon Mobile and Castro Oil in Baton Rouge, Imperial Sugar in Gramercy, the Tobasco Plant in New Iberia and Associated Grocers in Baton Rouge and Wagner, Louisiana. For these reasons, the trial court found sufficient contacts with Louisiana existed to warrant application of Louisiana law.
The trial court noted that the stated coverage territory is defined in the language of the policy as "the United States of America." The trial court determined that, in this case, the available coverage is $1,000,000.00 unless validly rejected, noting that to effect the valid rejection of UM coverage under LSA-R.S. 22:1406(d)(1)(a), the insured or his authorized agent must expressly set forth, in a single document, that UM coverage is rejected in the State of Louisiana as of a specific date and the particular policy issued or to be issued by the insurer. The trial court further reasoned that any writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. The trial court thus concluded that in the absence of any such writing or rejection, coverage afforded in this case was $1,000,000.00 because there was no valid waiver or rejection of the UM coverage.
Cherokee contends in its first two assignments of error that the trial court erred in finding that Louisiana law applied herein, rather than Arkansas law and in applying Louisiana law to erroneously determine that the UM policy limits are $1,000,000.00.
When conducting a choice-of-law analysis, we look to LSA-C.C. arts. 3515 and *655 3537. Dunlap v. Hartford Insurance Company of the Midwest, XXXX-XXXX (La. App. 1st Cir.3/24/05), 907 So.2d 122, 124. The objective of the choice-of-law process is to identify the state whose policies would be most seriously impaired if its laws were not applied to the particular issue involved in the law suit. See LSA-C.C. art. 3515 and 3537.
According to Louisiana Civil Code article 3515:
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Moreover, LSA-C.C. art. 3537 sets forth:
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
In accordance with these articles, the nature, type and purpose of the contract, as well as the relationship of each state to the party and to the dispute, must be considered to determine which state's policies would be most seriously impaired if its laws were not applied. Dunlap v. Hartford Insurance Company of the Midwest, 907 So.2d at 124. In support of and in opposition to their respective motions for summary judgment, extensive documentary evidence was introduced, which reflects the following.[1]
*656 The Cherokee bobtail policy number BTO50007 was negotiated and purchased in Arkansas by Central Hauling through its agent, AON Risk Services, Inc. Cherokee is a domestic insurance company domiciled in Warren, Michigan, but licensed to sell insurance in the State of Arkansas. Cherokee Insurance Company, however, is also registered and licensed with the Louisiana Department of Insurance to provide and sell automobile liability insurance in Louisiana, and has been doing so since 1972. Further, Triche is specifically identified as an owner/operator covered under the bobtail policy, in a bobtail schedule attached to Central Hauling's insurance policy. Triche paid Cherokee's premium, for the bobtail coverage afforded to him through Central Hauling, on a weekly basis. Importantly, the very purpose of this policy is to protect owner/operators, like Triche, when they are not in the process of hauling goods or cargo for Central Hauling. Likewise, another purpose of the bobtail policy is to protect Central Hauling from liability when its owner/operators are at home or on personal errands in their trucks. The bobtail policy specifically provides coverage to the owner/operators when their units are engaged in personal rather than business use, i.e., while en route returning home or while on a personal errand. The bobtail policy further provides that UM coverage is afforded in the amount of $50,000.00 "or statutory minimum." However, the bobtail policy does not contain a rejection or selection-of-lower-limits form as required by Louisiana law for UM coverage, although the coverage territory of the policy, as stated therein, is "The United States of America." While the policy contains endorsements and modifications of UM coverage for covered automobiles licensed or principally "garaged in" or for "`garage operations' conducted in" Arkansas, Triche's covered automobile was garaged in Louisiana. Thus, in my view, these limiting endorsements are inapplicable to Triche.
As an insured under the policy, Triche's relationship to the state, the occurrence, the contract and the dispute are also relevant matters which must be considered in a choice-of-law analysis. See LSA-C.C. arts. 3515 and 3537; Dunlap v. Hartford Insurance Company of the Midwest, 907 So.2d at 124. Triche has been a resident of Louisiana since 2001, residing in Donaldsonville, Louisiana, with his wife, Donna. On January 5, 2005, he entered in to an owner/operator agreement with Central Hauling to transport freight nationwide in his freightliner truck. Pursuant to his agreement with Central Hauling, Triche had previously made numerous pick-ups from and deliveries to Louisiana businesses, including the Exxon Mobile refinery in Baton Rouge, Castro Oil in Port Allen, Imperial Sugar in Gramercy, the Tobasco Plant in New Iberia, Associated Groceries in Baton Rouge, and businesses in Wagner, Louisiana. Triche had also regularly picked up trailers from Central Hauling's "drop yard" in Port Allen, Louisiana. After Triche was discharged from the hospital in Arkansas, he returned to his home in Louisiana, where he received follow-up medical care and treatment, skilled nursing services and rehabilitation services. At all pertinent times, Triche's freightliner, used for hauling goods for Central Hauling, was garaged at his home in Donaldsonville, Louisiana.
At the time of the accident, Triche was not in the course and scope of any business *657 for Central Hauling. Instead, he had left the Central Hauling yard in Arkansas to get lunch with Martin, another Louisiana resident, in Martin's personal vehicle, which was registered, licensed, and garaged in Louisiana. Martin's vehicle was uninsured.
Central Hauling is a registered Arkansas corporation, using dry and refrigerated motor carriers to conduct its business in forty-eight states. Although Central Hauling owned approximately twenty trucks, it primarily used owner/operators to haul freight, having approximately four hundred thirty owner/operator trucks in its fleet. Central Hauling has a "drop yard" in Port Allen, Louisiana, where drivers park their trailers, pick up loads, or switch out loads with other drivers. Central Hauling also conducts significant business in Louisiana and pays apportionment schedules for gasoline taxes so that its trucks may travel freely through Louisiana.
Considering the evidence submitted herein, Central Hauling, Triche, and Cherokee could readily anticipate that another state's laws could apply, considering the policy coverage territory was the entire United States. Further, the evidence establishes that Central Hauling knew, or should have known, that its owner/operators, who were residents of other states, were insured under the policy, and that their vehicles were garaged in other states. Moreover, Triche was specifically listed as an insured in a bobtail schedule attached to the policy, and had substantial contacts and presence in Louisiana. In addition to Triche's substantial contacts with the State of Louisiana, we agree that Central Hauling and Cherokee had a substantial commercial presence in the State of Louisiana, sufficient to conclude that although the accident herein occurred in Arkansas, given the circumstances of this case, Louisiana's interests in applying its UM laws in this case outweigh the interests of Arkansas herein. Thus, I find no error by the district court in its choice-of-law analysis or in its application of Louisiana law.
Further, under Louisiana's UM statute, LSA-R.S. 22:680,[2] automobile liability insurance delivered or issued for delivery in Louisiana and arising out of the ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage equal to the liability coverage provided to the insured for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. Halphen v. Borja, XXXX-XXXX (La.App. 1st Cir.5/4/07), 961 So.2d 1201, 1205, writ denied, XXXX-XXXX (La.9/21/07), 964 So.2d 338. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534, 537 (La.1991). Exclusionary provisions in automobile liability insurance policies are to be strictly construed in favor of coverage. Collins v. Farris, XXXX-XXXX (La.App. 1st Cir.11/3/04), 897 So.2d 634, 638.
Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well settled that a person who does not qualify as an insured for liability coverage under a policy of insurance is not entitled to UM *658 coverage under the policy. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196. UM coverage attaches to the person of the insured, not the vehicle, and any person who enjoys the status of insured enjoys such coverage protection simply by reason of having sustained injury by an uninsured or underinsured motorist. Howell v. Balboa Insurance Company, 564 So.2d 298, 301-302 (La.1990).
Considering the evidence in the record submitted by both plaintiffs and Cherokee, and considering the applicable jurisprudence, I find the trial court correctly determined that Cherokee's policy afforded UM coverage for its insured, Triche, in the amount of $1,000,000.00 absent a valid UM waiver herein.
With regard to Cherokee's argument in its third assignment of error, i.e., that plaintiffs are precluded from recovery against any other UM/UIM policy that plaintiffs may have access to because they have already elected to recover, "and have recovered," $50,000.00 in UM/UIM coverage from State Farm, I likewise find no merit.
At the hearing on the motions for summary judgment, counsel for State Farm acknowledged that State Farm had tendered $50,000.00 to plaintiffs, which was the extent of their UM coverage, but that counsel for plaintiffs subsequently returned the amount tendered, as plaintiffs opted to recover under the Cherokee policy. Further, when counsel for Cherokee asked the trial court if plaintiffs' election to recover UM funds from State Farm would affect their recovery against Cherokee, the following colloquy occurred:
THE COURT:
He doesn't have to take State Farm's money.
[COUNSEL FOR PLAINTIFFS]:
I gave it back.
[COUNSEL FOR CHEROKEE]:
Okay.
THE COURT:
Have you got the State Farm money?
[COUNSEL FOR PLAINTIFFS]:
No. No, I don't.
THE COURT:
I didn't think you did.
[COUNSEL FOR STATE FARM]:
State Farm got it back.
THE COURT:
Exactly. That's what I assumed.
If multiple policies apply to a claim for UM benefits, the insured is entitled to select a policy, so long as the insured is not occupying a vehicle owned by the insured, but not described in the policy. See Seither v. Winnebago Industries, Inc., 2000-2196 (La.App. 1st Cir.1/23/02), 808 So.2d 792, 796. Plaintiffs herein returned the tendered funds to State Farm. Thus, they clearly did not recover against State Farm's UM policy. Rather, plaintiffs elected to seek recovery under Cherokee's UM policy. Cherokee has asserted no authority which binds a plaintiff to a selection of certain UM coverage when, as here, the plaintiff has returned any tendered funds and elected to recover under another available UM policy. Thus, in my view, this assignment of error likewise lacks merit.
For these reasons, I respectfully dissent and would affirm the judgment of the trial court.
NOTES
[1] The "bobtail" policy herein provided insurance coverage to owner/operators when they used their units for purposes other than business or hauling goods for Central Hauling, i.e., while on their way to and from home, or when traveling to a store. Although Central Hauling procured the bobtail coverage through its insurance broker, AON Risk Services, Inc., the weekly and monthly rate for the cost of the bobtail coverage was directly charged by Central Hauling to the individual owner/operators and was deducted from their pay each week.
[2] Plaintiffs' claims against the other defendants named in this matter, Lincoln General Insurance Company, CalArk International, Inc.'s insurer, and State Farm Mutual Automobile Insurance Company, Donna Triche's UM insurer, were dismissed. Although State Farm unconditionally tendered $50,000.00 pursuant to Donna Triche's UM coverage under her automobile insurance policy, plaintiffs returned the tender and elected to pursue their claims against Triche's UM coverage with Cherokee.
[3] After the October 22, 2007 hearing, Cherokee filed an application for supervisory writs with this Court seeking review of the trial court's grant of plaintiffs' motion for summary judgment. On November 6, 2007, this Court denied Cherokee's writ application, declining to exercise its supervisory jurisdiction under the criteria set forth in Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981). See Triche v. Martin, 2007 CW 2179 (unpublished writ action).
[4] We conclude that Cherokee also appeals here the October 22, 2007 judgment. The October 22, 2007 judgment was a partial final judgment pursuant to La. C.C. P. art. 1915 B that was not determined to be final and was not certified as final. La. C.C.P. art. 1915 B(2) provides that in the absence of such determination and designation, any order or decision of the trial court "shall not constitute a final judgment for purposes of an immediate appeal." Pertinently here, the article further provides that, "[a]ny such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." The January 3, 2008 judgment states that it amends the October 22, 2007 judgment to make additional rulings on the same motions decided on October 22, 2007. Therefore, we consider and review the October 22, 2007 judgment as integrated into the January 3, 2008 judgment.
[5] By Acts 2008, No. 415, § 1, effective January 1, 2009, Title 22 of the Louisiana Revised Statutes was reenacted to redesignate the current provisions of Title 22 in to a new format and number scheme without changing the substance of the provisions. Pursuant to this reenactment, La. R.S. 22:680 was renumbered as La. R.S. 22:1295. For ease of reference, we will refer to the statute's current number in this opinion.
[6] We note that Cherokee does not specifically appeal the denial of its motion for summary judgment on the issue of coverage under policy BT05007. And, a court of appeal does not have appellate jurisdiction to consider the denial of a motion for summary judgment. Hood v. Cotter, 08-0215, 08-0215 (La. 12/2/08), 5 So.3d 819, 823: "An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment." La. C.C.P. art. 968. Even though the same issue lies at the heart of the cross-motions motions for summary judgment, we decline to exercise our supervisory jurisdiction to review Cherokee's motion. See Id.
[7] This subsection provided as follows:

(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
[1] In support of their motion for summary judgment, plaintiffs introduced numerous documents, including, inter alia: the deposition testimony of Ralph Durante, president of Central Hauling; the Cherokee policy and declaration page; Central Hauling's Operator Agreement; the deposition testimony of Michael Cleveland, comptroller for CalArk and Central Hauling; the affidavit of Triche; the affidavit of Duane Hardy, a Farm Bureau representative; AON Risk Service Inc.'s monthly reporting form for Central Hauling's bobtail policy coverage premium per unit for policy period 1/1/05-1/1/06; Certificate of Authority for Cherokee Insurance Company; Central Hauling's Driver's Manual; Texas liability insurance card; Texas apportioned license cab card, and history of settlements with domestic owners; plaintiffs' petition for damages and supplemental petition for damages; and a bill of sale for Triche's truck from Arkansas Equipment Leasing, Inc.

In support of Cherokee's motion for summary judgment, it also introduced numerous documents, including: the affidavit of Mark Dadabbo, President of Cherokee Insurance Company; the Cherokee Insurance declaration page and policy; the accident report from the Arkansas State Police; Central Hauling's Operator Agreement; Certificates of Good Standing from the Arkansas Secretary of State for Central Transport, Inc., Central Hauling, Inc., Arkansas Equipment Leasing, Inc., Cherokee Insurance Company, and AON Risk Services, Inc.; certification of Cherokee Insurance Company's registration as a Michigan company; the equipment lease agreement between Triche and Arkansas Equipment Leasing, Inc.; AON's monthly reporting form for Central Hauling's bobtail policy coverage premium per unit for policy period 1/1/05-1/1/06; Triche's Commercial Driver's License and 1099 for 2005-2006; a checklist for qualification of new drivers and application; Central Hauling's history of settlements with domestic owners; the affidavit of Chip Magee, the State Farm Claims Representative; and an insurance quote from AON Risk Services to Central Hauling for coverage by Cherokee Insurance Company.
[2] By Acts 2008, No. 415, § 1, effective January 1, 2009, Title 22 of the Louisiana Revised Statutes was reenacted to redesignate the current provisions of Title 22 in to a new format and number scheme without changing the substance of the provisions. Pursuant to this reenactment, LSA-R.S. 22:680 was renumbered as LSA-R.S. 22:1295.