WHIPPLE, J.,
dissenting.
hi respectfully disagree with the majority’s opinion that a conflict of laws analysis is unnecessary in this matter. Given the particular facts of this case, the policy at issue, and the significant contacts with Louisiana, I would find the trial court correctly determined that Cherokee’s bobtail policy afforded the Triches coverage herein.
In its thorough written reasons for judgment, the trial court noted that Cherokee had numerous contacts with the State of Louisiana and had purposefully availed itself of the laws of Louisiana, having been “registered” to write vehicle insurance in Louisiana since 1972. Thus, the trial court found that “application of Louisiana law to an insurance company that is required by statute to adhere to Louisiana law to write vehicle liability insurance to Louisiana should be no surprise, nor unfair.” After reviewing the evidence, the trial court concluded that Triche had significant contacts with Louisiana, in that he was a resident of Louisiana and he was treated in Louisiana for injuries sustained in the accident. The trial court further noted that Central Hauling likewise had significant contacts with Louisiana, in that: (1) Central Hauling is an Arkansas corporation engaged in business in the forty-eight contiguous United States; (2) Central Hauling specifically purchased bobtail insurance on behalf of Triche to cover him when he was in Louisiana at his home and not hauling a load for Central Hauling to protect Central Hauling; and (3) Central Hauling has numerous business contacts with |2Louisiana. Specifically, these contacts included Central Hauling’s maintenance of a drop yard in Port Allen, Louisiana, and its transportation of goods to and from Exxon Mobile and Castro Oil in Baton Rouge, Imperial Sugar in Gramercy, the Tobasco Plant in New Iberia and Associated Grocers in Baton Rouge and Wagner, Louisiana. For these reasons, the trial court found sufficient contacts with Louisiana existed to warrant application of Louisiana law.
The trial court noted that the stated coverage territory is defined in the language of the policy as “the United States of America.” The trial court determined that, in this case, the available coverage is $1,000,000.00 unless validly rejected, noting that to effect the valid rejection of UM coverage under LSA-R.S. 22:1406(d)(l)(a), the insured or his authorized agent must expressly set forth, in a single document, that UM coverage is rejected in the State of Louisiana as of a specific date and the particular policy issued or to be issued by the insurer. The trial court further reasoned that any writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. The trial court thus concluded that in the absence of any such writing or rejection, coverage afforded in this case was $1,000,000.00 because there was no valid waiver or rejection of the UM coverage.
Cherokee contends in its first two assignments of error that the trial court erred in finding that Louisiana law applied herein, rather than Arkansas law and in applying Louisiana law to erroneously determine that the UM policy limits are $1,000,000.00.
When conducting a choice-of-law analysis, we look to LSA-C.C. arts. 3515 and *655 3537. Dunlap v. Hartford, Insurance Company of the Midwest, 2004-0725 (La. App. 1st Cir.3/24/05), 907 So.2d 122, 124. The objective of the choice-of-law process is to identify the state whose policies would be most seriously | .¡impaired if its laws were not applied to the particular issue involved in the law suit. See LSA-C.C. art. 3515 and 3537.
According to Louisiana Civil Code article 3515:
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Moreover, LSA-C.C. art. 3537 sets forth:
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other.
In accordance with these articles, the nature, type and purpose of the contract, as well as the relationship of each state to the party and to the dispute, must be considered to determine which state’s policies would be most seriously impaired if its laws were not applied. Dunlap v. Hartford Insurance Company of the Midwest, 907 So.2d at 124. In support of and in opposition to their respective motions for summary judgment, extensive documentary evidence was introduced, which reflects the following.[1]
*656 LThe Cherokee bobtail policy number BT050007 was negotiated and purchased in Arkansas by Central Hauling through its agent, AON Risk Services, Inc. Cherokee is a domestic insurance company domiciled in Warren, Michigan, but licensed to sell insurance in the State of Arkansas. Cherokee Insurance Company, however, is also registered and licensed with the Louisiana Department of Insurance to provide and sell automobile liability insurance in Louisiana, and has been doing so since 1972. Further, Triche is specifically identified as an owner/operator covered under the bobtail policy, in a bobtail schedule attached to Central Hauling’s insurance policy. Triche paid Cherokee’s premium, for the bobtail coverage afforded to him through Central Hauling, on a weekly basis. Importantly, the very purpose of this policy is to protect owner/operators, like Triche, when they are not in the process of hauling goods or cargo for Central Hauling. Likewise, another purpose of the bobtail policy is to protect Central Hauling from liability when its owner/operators are at home or on personal errands in their trucks. The bobtail policy specifically provides coverage to the owner/operators when their units are engaged in personal rather than business use, i.e., while en route returning home or while on a personal errand. The bobtail policy further provides that UM coverage is afforded in the amount of $50,000.00 “or statutory minimum.” However, the bobtail policy does not contain a rejection or selection-of-lowerJimits5 form as required by Louisiana law for UM coverage, although the coverage territory of the policy, as stated therein, is “The United States of America.” While the policy contains endorsements and modifications of UM coverage for covered automobiles licensed or principally “garaged in” or for “ ‘garage operations’ conducted in” Arkansas, Triche’s covered automobile was garaged in Louisiana. Thus, in my view, these limiting endorsements are inapplicable to Triche.
As an insured under the policy, Triche’s relationship to the state, the occurrence, the contract and the dispute are also relevant matters which must be considered in a choice-of-law analysis. See LSA-C.C. arts. 3515 and 3537; Dunlap v. Hartford Insurance Company of the Midwest, 907 So.2d at 124. Triche has been a resident of Louisiana since 2001, residing in Don-aldsonville, Louisiana, with his wife, Donna. On January 5, 2005, he entered in to an owner/operator agreement with Central Hauling to transport freight nationwide in his freightliner truck. Pursuant to his agreement with Central Hauling, Triche had previously made numerous pick-ups from and deliveries to Louisiana businesses, including the Exxon Mobile refinery in Baton Rouge, Castro Oil in Port Allen, Imperial Sugar in Gramercy, the Tobasco Plant in New Iberia, Associated Groceries in Baton Rouge, and businesses in Wagner, Louisiana. Triche had also regularly picked up trailers from Central Hauling’s “drop yard” in Port Allen, Louisiana. After Triche was discharged from the hospital in Arkansas, he returned to his home in Louisiana, where he received follow-up medical care and treatment, skilled nursing services and rehabilitation services. At all pertinent times, Triche’s freightliner, used for hauling goods for Central Hauling, was garaged at his home in Donaldsonville, Louisiana.
At the time of the accident, Triche was not in the course and scope of any business *657 for Central Hauling. Instead, he had left the Central Hauling yard in | ^Arkansas to get lunch with Martin, another Louisiana resident, in Martin’s personal vehicle, which was registered, licensed, and garaged in Louisiana. Martin’s vehicle was uninsured.
Central Hauling is a registered Arkansas corporation, using dry and refrigerated motor carriers to conduct its business in forty-eight states. Although Central Hauling owned approximately twenty trucks, it primarily used owner/operators to haul freight, having approximately four hundred thirty owner/operator trucks in its fleet. Central Hauling has a “drop yard” in Port Allen, Louisiana, where drivers park their trailers, pick up loads, or switch out loads with other drivers. Central Hauling also conducts significant business in Louisiana and pays apportionment schedules for gasoline taxes so that its trucks may travel freely through Louisiana.
Considering the evidence submitted herein, Central Hauling, Triche, and Cherokee could readily anticipate that another state’s laws could apply, considering the policy coverage territory was the entire United States. Further, the evidence establishes that Central Hauling knew, or should have known, that its owner/operators, who were residents of other states, were insured under the policy, and that their vehicles were garaged in other states. Moreover, Triche was specifically listed as an insured in a bobtail schedule attached to the policy, and had substantial contacts and presence in Louisiana. In addition to Triche’s substantial contacts with the State of Louisiana, we agree that Central Hauling and Cherokee had a substantial commercial presence in the State of Louisiana, sufficient to conclude that although the accident herein occurred in Arkansas, given the circumstances of this case, Louisiana’s interests in applying its UM laws in this case outweigh the interests of Arkansas herein. Thus, I find no error by the district court in its choice-of-law analysis or in its application of Louisiana law.
17Further, under Louisiana’s UM statute, LSA-R.S. 22:680,[2] automobile liability insurance delivered or issued for delivery in Louisiana and arising out of the ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage equal to the liability coverage provided to the insured for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. Halphen v. Borja, 2006-1465 (La.App. 1st Cir.5/4/07), 961 So.2d 1201, 1205, writ denied, 2007-1198 (La.9/21/07), 964 So.2d 388. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534, 537 (La.1991). Exclusionary provisions in automobile liability insurance policies are to be strictly construed in favor of coverage. Collins v. Farris, 2003-1991 (La.App. 1st Cir.11/3/04), 897 So.2d 634, 638.
Although Louisiana’s public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well settled that a person who does not qualify as an insured for liability coverage under a policy of insurance is not entitled to UM *658 coverage under the policy. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196. UM coverage attaches to the person of the insured, not the vehicle, and any person who enjoys the status of insured enjoys such coverage protection simply by reason of having sustained injury by an uninsured or underinsured motorist. Howell v. Balboa Insurance Company, 564 So.2d 298, 301-302 (La.1990).
Considering the evidence in the record submitted by both plaintiffs and Cherokee, and considering the ■ applicable jurisprudence, I find the trial court |scorrectly determined that Cherokee’s policy afforded UM coverage for its insured, Triche, in the amount of $1,000,000.00 absent a valid UM waiver herein.
With regard to Cherokee’s argument in its third assignment of error, i.e., that plaintiffs are precluded from recovery against any other UM/UIM policy that plaintiffs may have access to because they have already elected to recover, “and have recovered,” $50,000.00 in UM/UIM coverage from State Farm, I likewise find no merit.
At the hearing on the motions for summary judgment, counsel for State Farm acknowledged that State Farm had tendered $50,000.00 to plaintiffs, which was the extent of their UM coverage, but that counsel for plaintiffs subsequently returned the amount tendered, as plaintiffs opted to recover under the Cherokee policy. Further, when counsel for Cherokee asked the trial court if plaintiffs’ election to recover UM funds from State Farm would affect their recovery against Cherokee, the following colloquy occurred:
THE COURT:
He doesn’t have to take State Farm’s money.
[COUNSEL FOR PLAINTIFFS]:
I gave it back.
[COUNSEL FOR CHEROKEE]:
Okay.
THE COURT:
Have you got the State Farm money?
[COUNSEL FOR PLAINTIFFS]:
No. No, I don’t.
THE COURT:
I didn’t think you did.
[COUNSEL FOR STATE FARM]:
| flState Farm got it back.
THE COURT:
Exactly. That’s what I assumed.
If multiple policies apply to a claim for UM benefits, the insured is entitled to select a policy, so long as the insured is not occupying a vehicle owned by the insured, but not described in the policy. See Seither v. Winnebago Industries, Inc., 2000-2196 (La.App. 1st Cir.1/23/02), 808 So.2d 792, 796. Plaintiffs herein returned the tendered funds to State Farm. Thus, they clearly did not recover against State Farm’s UM policy. Rather, plaintiffs elected to seek recovery under Cherokee’s UM policy. Cherokee has asserted no authority which binds a plaintiff to a selection of certain UM coverage when, as here, the plaintiff has returned any tendered funds and elected to recover under another available UM policy. Thus, in my view, this assignment of error likewise lacks merit.
For these reasons, I respectfully dissent and would affirm the judgment of the trial court.

. In support of their motion for summary judgment, plaintiffs introduced numerous documents, including, inter alia: the deposition testimony of Ralph Durante, president of Central Hauling; the Cherokee policy and declaration page; Central Hauling’s Operator Agreement; the deposition testimony of Michael Cleveland, comptroller for CalArk and Central Hauling; the affidavit of Triche; the affidavit of Duane Hardy, a Farm Bureau representative; AON Risk Service Inc.'s monthly reporting form for Central Hauling's bobtail policy coverage premium per unit for policy period 1/1/05-1/1/06; Certificate of Authority for Cherokee Insurance Company; Central Hauling’s Driver's Manual; Texas liability insurance card; Texas apportioned license cab card, and history of settlements with domestic owners; plaintiffs’ petition for damages and supplemental petition for damages; and a bill of sale for Triche’s truck from Arkansas Equipment Leasing, Inc. In support of Cherokee’s motion for summary judgment, it also introduced numerous documents, including: the affidavit of Mark Dadabbo, President of Cherokee Insurance Company; the Cherokee Insurance declaration page and policy; the accident report from the Arkansas State Police; Central Hauling’s Operator Agreement; Certificates of Good Standing from the Arkansas Secretary of State for Central Transport, Inc., Central Hauling, Inc., Arkansas Equipment Leasing, Inc., Cherokee Insurance Company, and AON Risk Services, Inc.; certification of Cherokee Insurance Company’s registration as a Michigan company; the equipment lease agreement between Triche and Arkansas Equipment Leasing, Inc.; AON’s monthly reporting form for Central Hauling’s bobtail policy coverage premium per unit for policy period 1/1/05-1/1/06; Triche’s Commercial Driver's License and 1099 for 2005-2006; a checklist for qualification of new drivers and applica- *656 lion; Central Harding's history of settlements with domestic owners; the affidavit of Chip Magee, the State Farm Claims Representa-live; and an insurance quote from AON Risk Services to Central Hauling for coverage by Cherokee Insurance Company.

. By Acts 2008, No. 415, § 1, effective January 1, 2009, Title 22 of the Louisiana Revised Statutes was reenacted to redesignate the current provisions of Title 22 in to a new format and number scheme without changing the substance of the provisions. Pursuant to this reenactment, LSA-R.S. 22:680 was renumbered as LSA-R.S. 22:1295.